GARY M. RESTAINO
United States Attorney
District of Arizona
DAVID A. PIMSNER
Assistant United States Attorney
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: david.pimsner@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | CR-23-08132-PCT-JJT |
| vs. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| Donald Day, Jr., | |
| Defendant. | |

Defendant Donald Day, Jr. was charged with making two specific online threats, the elements and facts of which are clearly alleged in the Indictment (Doc. 3). Whether those threats violated 18 U.S.C. § 875(c) should be decided by a jury after hearing all of the evidence and context at trial. The United States has sufficiently alleged violations of 18 U.S.C. § 875(c) such that the case against Defendant should proceed to trial. Moreover, Defendant's motion to dismiss, which essentially previews arguments he can make at trial under Rule 29 or during his closing argument, is premature. As a result, Defendant's motion should be denied.

## **Background**

For at least several months, including in December 2022 and February 2023, Defendant made postings and comments online to incite violence and threaten various groups and individuals, including law enforcement and government authorities. *See* Indictment ¶¶ 1-15 (Doc. 3).

On December 16, 2022, Defendant threatened to kill law enforcement officers. This threat was made four days after his friends (referred to in the Indictment as "Individual 1" and "Individual 2"), shot and killed two police officers who came to their home looking for a missing person, wounded a third officer, and killed a neighbor who came to investigate. Indictment ¶¶ 7-10, 17-18, 21 (Doc. 3). As the Indictment alleges, shortly after killing the officers on December 12, 2022, Defendant's friends posted a video online stating "[t]hey came to us, and we killed them. If you don't defend yourself against these devils and demons, you're a coward." *Id*. ¶ 19. They specifically mentioned Defendant in their video, saying "We'll see you when we go home. We'll see you at home, Don. Love you." *Id*. Defendant responded to the video saying, among other things, "I tell you, family, that those bastards will regret that they ever fucked with us," "our enemies will become afraid of us," "We too, will never ever bow to the scum which plagues us," and "We love you, we care for you. -Don and Annie." *Id*. ¶ 20. Individual 1 and Individual 2 later died in a shootout with police. *Id*. ¶ 18, n.1.

Four days later, on December 16, 2022, Defendant posted a video titled "Daniel and Jane" to his YouTube channel, "Geronimo's Bones." *Id*. ¶¶ 21-23. In the video, Defendant said, among other things, "And here, my brave brother and sister, a son and a daughter of the Most High have done exactly what they were supposed to do, and that is kill these fucking devils." *Id*. ¶ 21. Defendant then stated, "[w]ell, like my brother [Individual 1], like my sister [Individual 2], it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people, We are owned by no one." *Id*. ¶ 21 & Count 1. Defendant made this statement after previously publicly posting on a social media platform that he is an "x-con, who's armed to the teeth" and that he owned multiple firearms. *Id*. ¶ 16.

Two months later, in February 2023, Defendant threatened T.G., the Director General of the World Health Organization. T.G. appeared in a video discussing the discovery of a new, Ebola-like, virus in Equatorial Guinea; the virus had a high mortality

rate and there were no approved vaccines.  *Id.* ¶¶ 12-14.  Defendant commented on T.G.'s video, stating "it is time to kill these monsters, and any who serve them." *Id.*, Count 2.

On November 29, 2023, the grand jury issued a two-count indictment charging Defendant with violating 18 U.S.C. § 875(c), which prohibits interstate communications containing any threat to injure another person.  Count 1 concerned Defendant's threat to law enforcement, whom he, Individual 1 and Individual 2 had repeatedly referred to as "the devils."  Count 2 concerned Defendant's threat to T.G.

<u>Argument</u>

## I.  Standard

Defendant's motion to dismiss the Indictment (Doc. 23) is governed by Rules 7 and 12 of the Federal Rules of Criminal Procedure.   Rule 7 requires the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "'A legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend, and to enable him to plead double jeopardy.'" *United States v. Givens*, 767 F.2d 574, 584 (9th Cir.), cert. denied, 474 U.S. 953 (1985), citing *Hamling v. United States*, 418 U.S. 87, 117 (1974). "'An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *Id*. "'The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *Givens*, 767 F.2d at 584, citing *United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir.), cert. denied, 429 U.S. 839 (1976).

Rule 12 provides a defendant can move for dismissal based on a defect in the indictment, including failure to state an offense. Fed. R. Crim P. 12(b)(3)(B)(v). In considering a motion to dismiss, the Court is required to "accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged" and is "bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citation omitted) (holding district court erred in dismissing indictment).

"A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1995) (citation omitted) (holding district court erred in dismissing indictment). And the Court can consider a motion to dismiss only where it involves questions of law rather than fact. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452-53 (9th Cir. 1986) (holding "it was within the trial judge's sound discretion" to deny motion to dismiss and "defer the issue to jury consideration").

**II.   Analysis**

The Indictment here satisfies the requirements of Rule 7.  It states the elements of the offense with sufficient clarity to apprise Defendant of the charges against him.  It closely tracks the elements and language of the applicable Ninth Circuit Model Criminal Jury Instruction, Instruction 8.13, and includes the statutory language of 18 U.S.C. § 875(c).  Model Instruction 8.13 states:

> First, the defendant knowingly transmitted in [interstate commerce] [foreign commerce] a [*insert form of communication*] containing a threat to [[kidnap] [injure]] [*insert name or title of natural person*].
>
> Second, such [*insert form of communication*] was transmitted for the purpose of issuing a threat, or with knowledge that the [*insert form of communication*] would be viewed as a threat.
>
> The government need not prove that the defendant intended to carry out the threat.

Instruction 8.13, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit (2022 Edition, last updated August 2023).[1]

The Indictment includes all these elements (and more). It alleges Defendant "knowingly transmit[ted] in interstate and foreign commerce" communications in the form of "a video posted on YouTube" on December 16, 2022 (Count 1), and a "comment[] on a

---

[1] *Available at* https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2023_08.pdf .

video, posted on BitChute" in February 2023 (Count 2). It further alleges these communications included threats to "injure the person of another" that is "any law enforcement official who comes to [Defendant's] residence" (Count 1) and T.G. (Count 2). Both Counts 1 and 2 allege Defendant acted "with the intent to communicate a true threat of violence and with recklessness as to whether the communication would be viewed as a true threat of violence," consistent with *Counterman v. Colorado*, 600 U.S. 66, 77-79 (2023) (holding government must prove the defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence").

The allegations in Counts 1 and 2 (on pages 5-6 of the Indictment) would be sufficient standing alone. But the Indictment includes additional allegations in paragraphs 1-24 (pages 1-5) that provide context for the charges in Counts 1 and 2. Read in its entirety, with common sense and necessarily implied facts, the Indictment clearly lays out Defendant's communications that are alleged to have violated 18 U.S.C. § 875(c). *Givens*, 767 F.2d at 584.

Defendant's motion does not argue the Indictment is unclear about the charges against him or that it omits an essential fact or element. Rather, Defendant moves to dismiss the Indictment on First Amendment grounds, arguing his communications were not "true threats." *See* Motion at 6-9 (Doc. 23). Defendant's motion also argues his communications were not addressed to a "person" within the meaning of 18 U.S.C. § 875(c). *See* Motion at 3-6 (Doc. 23). As discussed below, the questions raised by defendant's motion should be decided by a jury after hearing all the evidence, including evidence not included in the Indictment.

### A. Counts 1 & 2 allege true threats.

The Indictment sufficiently alleges Defendant's communications – "The devils come for us, they fucking die" and "It is time to kill these monsters" – were true threats of violence. "True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). A true threat is a serious expression conveying that a speaker means to commit an act of unlawful

violence to a particular individual or group of individuals. *Virginia v. Black*, 538 U.S. 343, 359 (2003). The term "true" distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow. *Watts v. United States*, 394 U.S. 705, 708 (1969).

"Whether a statement amounts to a 'true threat' is a question of fact best decided by a jury." *See, e.g.*, *United States v. Zavalidroga*, 165 F.3d 1241, No. 97-10290, 1998 WL 403361, at *1 (9th Cir. 1998); *United States v. Stock*, 728 F.3d 287, 298 (3d Cir. 2013) ("In the usual case, whether a communication constitutes a threat or true threat 'is a matter to be decided by the trier of fact.'") (citation omitted); *United States v. Syring*, 522 F. Supp. 2d 125, 134 (D.D.C. 2007) ("[W]hether Defendant's communications constituted a true threat is an issue properly left to the jury as the trier of facts."). A district court should dismiss an indictment only if the language is so facially insufficient that no reasonable jury could find that the language amounted to a true threat. *Zavalidroga*, 1998 WL 403361, at *1; *United States v. Toltzis*, No. 14-CR-00567-RMW, 2016 WL 3479084, at *3 (N.D. Cal. Jun. 27, 2016) (denying motion to dismiss counts alleging violations of 18 U.S.C. § 876(c)).

A reasonable jury could conclude Defendant's threats in Counts 1 & 2 of the Indictment are true threats. As context for Count 1, the Indictment alleges Defendant's friends, Daniel and Jane, admitted to killing police officers, whom they referred to as "devils and demons," who came to their home.  Indictment ¶¶ 7-11, 17-19 (Doc. 3).  The Indictment alleges that, four days later, Defendant responded by posting his own video praising Daniel and Jane for having "done exactly what they were supposed to do, and that is to kill these fucking devils." *Id*. ¶ 21. Defendant went on to threaten that a similar fate would happen if the "devils" came for him.  *Id*. ¶ 22 ("Well, like my brother Daniel, like my sister Jane, it is no different for us. The devils come for us, they fucking die."). Given the context alleged in the Indictment, as well as additional context that will be presented at trial, a reasonable jury could conclude defendant's threat in Count 1 was a true threat.

Similarly, a reasonable jury could conclude Defendant's threat against T.G. was a true threat. As context for Count 2, the Indictment alleges T.G. appeared in a video discussing a new, Ebola-like, virus. Indictment ¶¶ 12-14. Defendant commented on T.G.'s video, saying "It is time to kill these monsters, and any who serve them. Where are my kind? Where are you? Am I the only one? Fuckin' hell." *Id.*, Count 2. Given the allegations in the Indictment, as well as additional context that will be presented at trial, a reasonable jury could conclude defendant's threat in Count 2 was a true threat.

Defendant's motion does not acknowledge the low, "no reasonable jury," standard for his motion to dismiss. Instead, his motion argues that the communication in Count 1 "cannot fairly be read as 'a serious expression of an intent to commit an act of unlawful violence'" and that the communication in Count 2 'is not an 'expression of intent' at all. Motion at 8 (Doc. 23). Whether the communications at issue are serious expressions of intent to commit acts of unlawful violence is a question for the jury to consider after it has heard all the evidence.

Defendant likens his case to *Watts v. United States* and *United States v. Bagdasarian*. *See* Motion at 8 (Doc. 23). His reliance on these cases is misplaced, however. The alleged threats in *Watts* (against then-President Johnson) and *Bagdasarian* (against then-Presidential candidate Obama) and the context surrounding them are very different than the threats at issue here. *See Watts*, 394 U.S. 705, 706-08 (1969) (discussing "crude offensive" comments Watts made at a public rally at the Washington Monument); *Bagdasarian*, 652 F.3d 1113, 1115 (9th Cir. 2011) (discussing "repugnant" statements that "directly encourage violence" which Bagdasarian posted to Yahoo! message board).[2]

_____

[2] Defendant also briefly mentions in his Motion that *Watts* supports that the statement underlying Count 1 is too conditional to be a true threat. *See* Motion at 8 (Doc. 23). However, as the Ninth Circuit has explained, "the conditional nature of a statement may be a factor in determining whether it constitutes a true threat," but it "is not dispositive." *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007) (citing *United States v. Watts*, 394 U.S. 705, 708 (1969)); *see also United States v. Weiss*, No. 20-10283, 2021 WL 6116629, at *2 (9th Cir. Dec. 27, 2021); *United States v. Havens*, 793 F. App'x 475, 476 (9th Cir. 2019). Rather, "[m]ost threats are conditional; they are designed to

Moreover, citing *Watts*, Defendant's motion wrongly suggests "even violent political hyperbole … [is] constitutionally protected." Motion at 6 (Doc. 23).  Given the facts alleged in the Indictment, Defendant's threats were far from political hyperbole.  According to the Indictment (Doc. 3), Defendant has had a history of inciting violence against law enforcement and government authorities (¶ 15), encouraged individuals in Australia who engaged in a deadly shootout with law enforcement, has publicly acknowledged that he is an "x-con, who's armed to the teeth" (¶ 16), and has publicly announced that if law enforcement came for him, his plan would be to attack and kill them (Count 2).  These facts are far different than the facts of *Watts*.  Additionally, contrary to Defendant's argument, Ninth Circuit case law holds defendants can still intend to threaten when their goal is political, or when the threat occurs in a political context. *E.g.*, *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1079 (9th Cir. 2002), as amended (July 10, 2002) (finding sufficient evidence of intent to intimidate based on context where anti-abortion group created "wanted" posters of abortion providers); *United States v. Sirhan*, 504 F.2d 818, 820 (9th Cir. 1974) (upholding conviction where defendant threatened to kill Golda Meir on behalf of Palestinian Liberation Organization).

Regardless of the underlying facts, *Watts* and *Bagdasarian* do not support granting Defendant's motion to dismiss at this early stage, before the government has an opportunity to present evidence at trial.  Both *Watts* and *Bagdasarian* went to trial and the appellate

accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats." *Sutcliffe*, 505 F.3d at 961 (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)). As a non-dispositive factor in the true-threat analysis, whether Defendant's threat in Count 1 was conditional does not support dismissing the Indictment.  Moreover, as the Indictment alleges, Defendant was issuing threats to law enforcement should they show up at his residence, while at the same time publicly supporting individuals in Australia who executed law enforcement officers and broadcasting that Defendant was a convicted felon in possession of firearms, all of which would ultimately support that he issued true threats.

courts in both cases relied on evidence presented at trial in holding they did not amount to true threats. *See*, *e.g.*, *Watts*, 394 U.S. at 707 (noting evidence showed both Watts and the crowd laughed after his statement was made); *Bagdasarian*, 652 F.3d at 1121-23 (discussing evidence regarding the defendant's gun possession, the reactions of persons who read his posts, and an email he sent two weeks after his posts). The courts in *Watts* and *Bagdasarian* concluded that the government did not present sufficient evidence at trial to establish the defendant's communications were true threats. *Watts*, 394 U.S. at 707; *Bagdasarian*, 652 F.3d at 1123. *Watts* and *Bagdasarian* do not suggest those cases should have been dismissed before trial. Likewise, this case should not be dismissed before trial.

### B.    Counts 1 & 2 sufficiently allege threats against natural persons.

Defendant argues that both counts charged against him should be dismissed because 18 U.S.C. § 875(c) is limited to "natural persons." Motion at 3 (Doc. 23). Defendant contends that Count 1, which alleges that Defendant threatened "any law enforcement official who comes to [Defendant's] residence" in Arizona, should be dismissed because it does not allege a threat against a specific natural person or a sufficiently finite group of individuals. *Id.* at 4. Defendant contends that Count 2, which alleges a threat against the Director General of the World Health Organization, should be dismissed because, according to Defendant, the language of the threat itself is more likely aimed at the World Health Organization as an entity or the entire global health community. *Id.* at 5.

The only case that Defendant cites in support of his arguments is *United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012); however, Defendant misconstrues the holding of *Havelock*. The defendant in *Havelock* mailed multiple envelopes that were addressed to entities, including media outlets and music-related websites. *Id.* at 1287. The envelopes contained a copy of his manifesto, which was not specifically addressed to any person. *Id.* The manifesto included multiple ramblings but also included statements that indicated prospective violent acts such as, "I will give my life[] [a]nd I will take as many of the baneful and ruinous ones with me" and "I will slay your children. I will shed the blood of the innocent." *Id.*

- 9 -

Because the defendant's mailings were all addressed to non-natural entities, namely newspapers and websites, and the defendant's manifesto was not addressed to a natural person, the court reversed the defendant's conviction and ordered that an entry of acquittal be entered. *Id.* at 1296. In doing so, the court found that the use of the word "person" in 18 U.S.C. § 876(c) means a "natural person" as opposed to non-natural entities such as corporations. *Id.* at 1292-93. The court focused on the fact that the language and context of § 876(c) did not allow for criminalization of threats to kidnap or injure non-natural entities. *See id.* at 1292 ("[T]his is not an absurd result. One of the purposes of § 876 is 'the preservation of the recipient's sense of personal safety.' The recipient's sense of personal safety is simply not implicated when the recipient is an entity.") (internal citation omitted).

The Court's holding in *Havelock* does not support Defendant's argument for multiple reasons.

First, as Defendant acknowledges, the *Havelock* Court focused on the "addressed to any other person" prong of 18 U.S.C. § 876, not the specific language of the statute under which the United States has charged Defendant, 18 U.S.C. § 875. *See* Motion at 5 (Doc. 23).

Second, Defendant incorrectly relies on *Havelock* to make the point that the group of victims in Count 1 alleged against Defendant, i.e., "any law enforcement official who comes to [Defendant's] residence," is less specific than the group of victims alleged in the *Havelock* indictment, namely "children and persons in the vicinity of the Super Bowl XLII event in Arizona." *See* Motion at 5 (Doc. 23). However, in *Havelock*, the language of the indictment was not even at issue. The court never addressed whether the group of victims as alleged by the Government in the indictment was sufficient because the court was analyzing the sufficiency of the evidence underlying the defendant's conviction at trial and reviewing what the facts at trial showed about the victims/recipients.

Third, even if the holding in *Havelock* applies to § 875, *Havelock* does not support the proposition that Defendant relies on in his motion, namely that the groups of victims alleged in Counts 1 and 2 of the Indictment against Defendant fail to allege a "natural

- 10 -

1    person" sufficient to comply with the statute.  *See* Motion at 5 (Doc. 23).

2         The Ninth Circuit has consistently found that groups of natural persons, as opposed
3    to specific individuals, are sufficient recipients for purposes of the threat statutes.  In fact,
4    in the aftermath of *Havelock*, the Ninth Circuit made this point clear in *United States v.*
5    *Keyser*, 704 F.3d 631, 641 (9th Cir. 2012).  In *Keyser*, a defendant convicted of violations
6    of 18 U.S.C. § 876 for mailing threatening packages to an unidentified "Manager" at
7    Starbucks and McDonald's argued that his convictions should be overturned because his
8    threats were not mailed to a "natural person."   The Court rejected that argument and
9    specifically discussed the holding in *Havelock* concluding that, "[t]here is nothing in the
10   *Havelock* court's reasoning that indicates we should require a threat to be addressed to one
11   particular, previously-identifiable person . . . and we see no reason to confine the phrase
12   'any other person' to anything less than its own broad terms." *Id.* at 641.  *Cf. United States*
13   *v. Stahlnecker*, No. 20-50173, 2021 WL 5150046, at *2 (9th Cir. Nov. 5, 2021) (holding
14   that 18 U.S.C. § 875(c) "does *not* require the particular person threatened be identified by
15   name"); *United States v. Linehan*, 835 F. App'x 914, 917 (9th Cir. Nov. 17, 2020) ("Section
16   875 does not require proof that a defendant threatened to injure any particular person.").

17        Because groups of victims of threats are considered "natural persons," courts have
18   consistently denied motions to dismiss indictments based on arguments similar to those
19   raised by Defendant, even in cases in which the alleged victims/recipients of the threats are
20   broad in scope.  *See, e.g.*, *United States v. Dennison*, No. 2:21-cr-00149-JDL-1, 2022 WL
21   834437, at *2-*3 (D. Me. Mar. 21, 2022) (denying a motion to dismiss an indictment
22   charging a violation of 18 U.S.C. § 875(c) where defendant posted an online threat to "kill
23   Jews with my ar15 tomorrow" and finding that the indictment was sufficient such that the
24   case should be presented to the jury); *United States v. Hussaini*, No. 19-60387-CR-
25   ALTMAN, 2022 WL 138474, at *8-*9 (S.D. Fla. Jan. 14, 2022) (denying a motion to
26   dismiss an indictment charging violations of 18 U.S.C. § 875(c) where defendant posted
27   videos on YouTube threatening to kill "Christians," "religious people," and "black people,"
28   finding that "blacks and Christians *are* 'discrete and identifiable' groups" such that the case

- 11 -

should proceed to the jury to analyze the context of the defendant's threats); *United States v. Naylor*, No. 8:12-CR-378, 2013 WL 1867064, at *2 (D. Neb. May 3, 2013) (denying a motion to dismiss indictment charging a violation of 18 U.S.C. § 876 where an envelope containing white powder was addressed to a business, Mutual of Omaha, but the district court found that the threat was ultimately to "whichever Mutual of Omaha employee had the misfortune to open the letter.")

As a result, the United States has sufficiently alleged natural persons in Counts 1 and 2 of the Indictment to overcome Defendant's motion to dismiss. In Count 1, the United States alleged a group of "natural persons," namely law enforcement officials (federal, State, or local) who would respond to Defendant's residence. *See* Indictment, at Count 1 (Doc. 3). As the Indictment (Doc. 3) alleges, Defendant has had a history of inciting violence against law enforcement and government authorities (¶ 15), encouraging individuals in Australia who engaged in a deadly shootout with law enforcement, publicly acknowledging that he is an "x-con, who's armed to the teeth" (¶ 16), and publicly announcing that if law enforcement came for him, they would die (Count 1). Given all of the context contained in the Indictment, the group of law enforcement officials allegedly threatened by Defendant is substantially more narrow in scope than groups of unspecified law enforcement officials in threats cases in which courts have denied similar motions to dismiss indictments.

For example, in *United States v. Ziobrowski*, No. 18-10250-DJC, 2019 WL 3306802, at *1 (D. Mass. Jul. 23, 2019), the district court denied a defendant's motion to dismiss the indictment charging the defendant with posting on social media that he would pay $500 "to anyone who kills an ice agent." Similar to Defendant, the defendant in *Ziobrowski* argued that the Government had not alleged a true threat based on a lack of an identifiable victim. *Id.* at *3. In denying the motion, the court found that the Government had sufficiently alleged that the online statement constituted a true threat against ICE agents and should move forward to trial. *Id*.

As another example, in *United States v. Abdulkadir*, No. 0:16-CR-00002-KES-

VLD, 2016 WL 659711, at *1 (D. Minn. Feb. 18, 2016), the defendant was charged for posting on his Twitter account threats to the FBI and an unnamed federal judge.  The defendant's statements included "#kill them FBI" and "I'm kill them FEDS for take my brothers." *Id*.  When the defendant moved to dismiss the indictment because the statements were against "federal law enforcement officers" as opposed to a specific "federal law enforcement officer," the district court disagreed.  *Id*. at *2.  The court denied the defendant's motion, reiterating that "courts have consistently interpreted statutes that prohibit threats against an individual to also include threats against identifiable groups of individuals." *Id.*

In Count 2, the United States has also sufficiently alleged a threat to a specific "natural person."  The United States' Indictment alleges that Defendant threatened a specific, individual, "T.G." who at the time of the alleged threat "was the Director General of the World Health Organization."  Indictment ¶¶ 12, 14, and Count 2 (Doc. 3).  The Indictment explicitly ties Defendant's threat to a video depicting T.G. speaking about a newly discovered virus. *Id*. ¶ 14 and Count 2.  Defendant's argument that the language of the threat in Count 2 does not support that the threat is actually aimed at T.G. is a question for the jury.  Moreover, even if, as Defendant argues, the threat is aimed at a group larger than just T.G., such as members of the larger global health community who promote positions on public health similar to T.G.'s views, such an identifiable group still constitutes a "natural person" for purposes of 18 U.S.C. § 875(c).

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Conclusion**

For all of these reasons, Defendant's motion to dismiss the Indictment should be denied.

Respectfully submitted this 9th day of January, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/David A. Pimsner*
DAVID A. PIMSNER
Assistant U.S. Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Certificate of Service

I hereby certify that on January 9, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:  Mark Rumold.

*s/Andrea Flores-Cromwell*
U.S. Attorney's Office