JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

MARK RUMOLD, Cal. Bar #279060
Asst. Federal Public Defender
Attorney for Defendant
mark_rumold@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-23-08132-PCT-JJT |
|---|---|
| Plaintiff, | |
| vs. | **REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| Donald Day, Jr., | |
| Defendant. | |

Defendant Donald Day, Jr. ("Mr. Day"), through undersigned counsel, hereby replies to the Government's Response to Defendant's Motion to Dismiss Indictment (the "response" or "Rep.") (Doc. #27) and requests that the motion be granted for the reasons stated in the attached Memorandum of Law.

Respectfully submitted:  January 16, 2024.

                JON M. SANDS
                Federal Public Defender

                /s/ *Mark Rumold*
                Mark Rumold
                Asst. Federal Public Defender

# MEMORANDUM OF LAW

The response misapprehends the relevant legal standard for a motion to dismiss under the First Amendment, misreads binding Circuit precedent, and fails to present a cogent theory of why the statements alleged in the Indictment are anything other than constitutionally protected speech. For these reasons and others as explained more fully in the motion to dismiss and below, the Indictment should be dismissed.

### I. A motion to dismiss is the proper vehicle for Mr. Day's legal arguments with respect to the sufficiency of the allegations.

The response suggests the relevant legal standard under which the motion to dismiss should be evaluated is whether there exists any possibility that the government could convince a "reasonable juror" that the charged statements are "true threats." Resp. at 5–7. For this proposition it cites only two unpublished district court cases. *Id.* at 6.

That standard is incorrect. As an initial matter, the "no reasonable juror" language the government repeats throughout the response appears borrowed from the standard for analyzing a motion under Rule 29 in which a trial court must determine "whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir. 1982). Instead, the Ninth Circuit has long held that whether a particular statement constitutes a "true threat" is a "constitutional fact"—a legal conclusion to which the trier of fact is afforded no deference. *See United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002); *United States v. Stewart*, 420 F.3d 1007, 1015 (9th Cir. 2005); *United States v. Bagdasarian*, 652 F.3d 1113, 1118 (9th Cir. 2011).

If an indictment fails to allege a "true threat," it is facially insufficient as a matter of law and must be dismissed by the district court. *See United States v. Carrier*, 672 F.3d 300, 306 (2d Cir. 1982) ("[W]here the factual proof [of a 'true threat'] is insufficient as a matter of law . . . the indictment [should] be dismissed.")

For this reason, motions to dismiss that implicate the First Amendment necessarily require a district court to undertake an analysis of the facts alleged in the indictment in

order to assess whether those facts are sufficient to state a "true threat." *See United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (noting that while "courts evaluating motions to dismiss" do not generally "evaluate the evidence upon which the indictment is based," in the context of § 875 this principle is "problematic, because the alleged threatening statement must be viewed from the objective perspective of the recipient" and it is therefore "incumbent on the Government to make that context clear in such an indictment.") A district court errs if it fails to dismiss allegations of violations of § 875(c) that do not, on the face of the indictment, allege "true threats." *Id.* at 1083.

Furthermore, an indictment that fails to allege an element of the statute—*i.e.*, that Mr. Day threatened a "natural person"—is readily susceptible to determination at the motion to dismiss stage. *See United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997) (affirming a district court's dismissal of an indictment charging a violation of § 875(c) because the indictment "fail[ed] to set forth all the elements necessary to constitute the offense *intended* to be punished and [therefore] must be dismissed as a matter of law.") (internal quotation marks omitted) (emphasis in original).

## II. Neither Count One nor Count Two alleges a threat against a "natural person."

As Mr. Day established in his motion to dismiss, neither count of the indictment alleges a threat against a "natural person" as that term has been interpreted within the Ninth Circuit. Mot. at 3–6.

*United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012) (en banc) held that a written manifesto promising to "slay [the] children" of individuals attending the Super Bowl was not a threat addressed to a "natural person." The response raises three arguments in opposition, none of which is availing.

First, the response argues that *Havelock* concerned the "addressed to any other person" prong of § 876 and not the "any threat to injure the person of another" prong of § 875." But the government provides no reason or argument in support of why the word "person" should be understood differently in these two related statutes. Indeed, *Havelock*

itself based its holding that § 876 was intended to refer only to "natural person" in part on a finding that "§ 875 clearly envisions that 'person' is limited to a natural person." *Id*. at 1292. Any suggestion that *Havelock* does not control with respect to the scope of "person" under § 875(c) should be disregarded.

Second, the response incorrectly claims that because *Havelock* concerned the sufficiency of the evidence presented at trial, it has nothing to say about the sufficiency of an allegation in an indictment. Resp. at 10. The government, however, does not identify any "fact" that the Ninth Circuit relied on in *Havelock* that was developed or needed to be developed at trial. Indeed, *Havelock* held that § 876(c) "requires that [a] threatening communication be addressed to a natural person" and then analyzed solely the communication itself to determine whether that element of the offense had been met. *Havelock*, 664 F.3d at 1286, 1296. It is true that *Havelock* arose in the context of a post-conviction challenge. Because the criminal system, unlike the civil system, does not permit interlocutory appeals of a motion to dismiss, criminal appeals challenging the denial of a motion to dismiss will only ever take place after a conviction at trial and will therefore always be considered alongside arguments about the sufficiency of the evidence. But the government cites no legal authority for the proposition that this procedural quirk renders all circuit case law inapposite to consideration of a motion to dismiss.

Indeed, courts of appeals have upheld grants of motions to dismiss where the communications alleged in the indictment "do not constitute communications containing a threat" on grounds that such indictments "fail[] to set forth all the elements necessary to constitute the offense intended to be punished." *Alkhabaz*, 104 F.3d at 1496. Courts of appeals have also held that district courts err in failing to dismiss counts of an indictment where the statements alleged do not constitute a "true threat." *See, e.g., Landham*, 251 F.3d at 1083 ("[T]he district court erred in not dismissing this count because it fails as a matter of law to state a violation of § 875(c)"). In any event, the government fails to

explain what additional evidence beyond the fact of the indictment would be necessary or even helpful for this Court to determine whether "any law enforcement official" constitutes a "person" within the meaning of § 875(c).

Lastly, the government misreads Mr. Day's motion as arguing that the indictment is insufficient because it does not name a "specific individual." Resp. at 11–12. It also misreads relevant circuit law as holding that no specificity at all with respect to the identity of the person being threatened is required. Resp. at 11. Mr. Day has not alleged—and does not allege—that an indictment is insufficient if it fails to name the person allegedly being threatened. He does allege, however, that there must be one (or more) specific, identifiable individuals—even if those individuals are not identified in the indictment by name or by title. But "[a]ny law enforcement official" lacks any such specificity.

The government relies on *Untied States v. Keyser*, 704 F.3d 631, 641 (9th Cir. 2012), which held that letters addressed to "manager" and sent to a Starbucks and a McDonald's were addressed to a "natural person." But the "manager" (or managers) of a freestanding retail establishment are identifiable persons whose identities are readily ascertained even if they are not specifically known to the sender of the letter. The list of out-of-circuit district court decisions on which the government relies, Resp. at 11–12, similarly allege threats directed at "discrete and identifiable groups." Resp. at 11 (quoting *United States v. Hussaini*, No. 19-60387-CR, 2022 WL 138474, at *8–9 (S.D. Fla. Jan. 14, 2022).

In contrast: "Any law enforcement official who comes to DAY's residence," is not such a "discrete or identifiable group." The group encompassed by the indictment is fluid and indeterminate. It would apparently include: (1) *any* law enforcement official, regardless of jurisdiction—from the local sheriff to the Director of the FBI to international law enforcement personnel; and (2) *any* of the above law enforcement officials present on Mr. Day's property for *any* purpose, including (i) (paradoxically) law enforcement on

his property with his consent (*e.g.*, responding to a 911 call for assistance), (ii) law enforcement on Mr. Day's property legally but without his permission (*e.g.*, to effectuate an arrest); and (iii) law enforcement that is on his property illegally (*e.g.*, without his permission or another lawful basis). Charitably, the above contains the *most* identifiable group encompassed by the Indictment—a group that easily contains hundreds of thousands (or even millions) of individuals. But the true scope may be broader still.[1]

Contrary to the government's claims, courts do not universally decline to dismiss indictments no matter how broad or indeterminate the "group" alleged. *See United States v. Baker*, 890 F.Supp. 1375, 1388 (E.D. Mich. 1995) (dismissing an indictment under § 875(c) because the group "13- and 14-year-old girls" was "too indeterminate . . . as to the person threated, even under the liberal interpretation given the requirement by some courts.").

The Court should dismiss Count 1 here.

With respect to Count Two, although the government has nominally identified a "natural person" in the indictment, the alleged "threat"—based on the language and grammar used—is not directed against that individual. The government's suggestion that the "global health community who promotes positions on public health similar to [the WHO]" is an "identifiable group" is irreconcilable with *Havelock*.[2] Count 2, then, should be dismissed as well.

---

[1] In addition to the above, "[a]ny law enforcement official" draws no distinction between on-duty law enforcement or off-duty law enforcement; or, for example, law enforcement that has served for 20 years or an official who joined *after* the alleged statement was made. The group encompassed by the indictment is fluid, unknowable, and indefinite.

[2] For example, the dissent in *Havelock* would have held that the threats contained in the manifesto were sufficient because they were addressed to "a community," and that this was sufficient to satisfy the requirement that they be addressed to a "natural person." *Havelock*, 664 F.3d at 1314–15. The dissent explained, "*[u]nlike the majority*, I see no reason to preclude liability under § 876 when a threatening communication is addressed to, and threatens mass murder against, a

### III. Neither Count One nor Count Two alleges a "true threat."

The response fails to respond to Mr. Day's argument that Count 2 cannot, as a matter of law, constitute a "true threat" because it does not "communicate a serious expression of intent to commit an unlawful act of violence to a particular individual or group of individuals." Mot. at 6; *Virginia v. Black*, 538 U.S. 343, 359 (2003).

Indeed, the government appears to agree that the "threat" alleged in Count 2 is not a statement of personal intention to commit any particular act at all. Rather, it claims that "the allegations in the indictment"—none of which has anything to do with the WHO or with its director—and unspecified "additional context that will be presented at trial" will somehow reveal that this statement is a "true threat." Resp. at 7.

However, the government cannot introduce evidence at trial that can change the grammar of the statement. The government cannot explain how the statement "it is time to kill these monsters" could plausibly constitute a serious statement of personal plan, purpose, or design—as opposed to a general statement of personal opinion or belief— under any set of facts. This is especially so, given the statement of disillusionment that immediately followed the alleged threat (*i.e.*, "Where are my kind? Where are you? Am I the only one? Fuckin' hell!").

Binding Ninth Circuit precedent holds that statements which "convey no explicit or implicit threat on the part of [the defendant] that he himself will [commit an illegal act of violence]" are not "true threats." Mot. at 8–9; *United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011). The response does not meaningfully engage with the legal standard set out in *Bagdasarian*, or its recognition that "predictions" and "exhortations" are not criminal threats. *Bagdasarian*, 652 F.3d at 1119.

---

community rather than a specific individual." *Id.* (emphasis added). The dissent, thus, clearly understood the majority in *Havelock* as requiring something more than a bare allegation that human beings comprised the group being threatened. And, thus, the "global health community"—just like "any law enforcement official"—is not a natural person for purposes of § 875(c).

7

Count 2 does not contain an explicit or implicit statement on the part of Mr. Day to do *anything*. It must be dismissed on this basis alone.

Similarly, Count 1 cannot be a "true threat" because no "recipient of the alleged threat could reasonably conclude that it expresses a determination or intent" to commit some unlawful act of violence in the future. *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Life Coalition of Life Activists*, 290 F.3d 1058, 1078 (9th Cir. 2002). The mere fact that a statement is conditional does not render it *per se not* a threat; Mr. Day does not argue as much. But the conditional nature of a statement is indisputably relevant to a "true threats" analysis. *Watts v. United States*, 394 U.S. 705, 707 (1969); *Bagdasarian*, 652 F.3d at 1119. In *Watts*, the Supreme Court placed significant weight on the fact that not only was the allegedly threatening statement conditional, but it was conditional on the occurrence of an event—namely, the speaker's induction into the army—which the speaker "vowed would never occur." *Watts*, 394 U.S. at 707.

The government has not alleged, nor does it seem reasonably plausible that at the time Mr. Day allegedly made the statement identified in Count 1, that law enforcement had plans to come to Mr. Day's home— much less to come to his home to kill him. The triggering events upon which the statement in Count 1 are alleged are simply too implausible and attenuated for the statement to constitute a "true threat."

## IV. CONCLUSION

For these reasons and as further elaborated in Mr. Day's motion to dismiss, both counts of the indictment must be dismissed as insufficient.