JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

MARK RUMOLD, Cal. Bar #279060
Asst. Federal Public Defender
Attorney for Defendant
mark_rumold@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-23-08132-PCT-JJT |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION TO DISMISS** |
| Donald Day, Jr., | |
| Defendant. | |

Defendant Donald Day, Jr. ("Mr. Day"), through undersigned counsel, respectfully moves the Court to dismiss Counts 3 and 4 of the indictment under the Second Amendment to the United States Constitution and *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 14 S.Ct. 2111 (2022).[1]

---

[1] Mr. Day previously filed a motion to dismiss the indictment, which originally consisted of two counts. (Doc. 23.) After that motion was fully briefed, the government filed a superseding indictment adding three additional counts and preserving unchanged the two counts from the original indictment. (Doc. 37.) Mr. Day is not refiling his original motion to dismiss but reasserts the arguments contained in his original motion to dismiss as to Counts 1 and 2 of the superseding indictment.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based thereon.

Respectfully submitted:     March 4, 2024.

JON M. SANDS
Federal Public Defender

 /s/ *Mark Rumold*
Mark Rumold
Asst. Federal Public Defender

# MEMORANDUM OF LAW

## I.   Introduction

Mr. Day moves, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss Counts 3 and 4 of the Amended Superseding Indictment, which charge possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 584. These laws violate the Second Amendment on their face and as applied to Mr. Day.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court reaffirmed that the Second Amendment right to bear arms is not a second-class right. 142 S. Ct. 2111, 2156 (2022). The Court rejected decades of "judicial deference to legislative interest balancing" in the form of means-end scrutiny in Second Amendment jurisprudence. *Id*. at 2131. Instead, *Bruen* instructs courts to ask only: (1) whether the Second Amendment's plain text covers the conduct, and (2) whether the Government can show the law is consistent with historical firearm regulations. *Id*. at 2126.

Using this analysis, multiple courts have already found that § 922(g)(1) is unconstitutional, either on its face, or as applied to certain defendants. *See, e.g.*, *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) (en banc); *United States v. Bullock*, __ F. Supp. 3d __, No. 3:18-cr-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023); *United States v. Neal*, __ F. Supp. 3d __, No. 20-CR-335 (N.D. Ill. Feb. 7, 2024); *United States v. Prince*, __ F. Supp. 3d __, No. 22-CR-240 (N.D. Ill. Nov. 2, 2023); *William v. Garland*, __ F. Supp. 3d __, No. 17-cv-2641 (E.D. Pa. Nov. 14, 2023); *United States v. Williams*, __ F. Supp. 3d __, No. 23-cr-20201 (E.D. Mich. Feb. 22, 2024).

Possession of an unregistered firearm is less frequently charged—and therefore less frequently challenged—but no less constitutionally infirm. The Government cannot meet its burden to show either statute is consistent with the Nation's historical tradition of firearm regulation, because there is no relevant historical evidence of categorically disarming felons or of banning short-barreled firearms. At the very least, there is no

evidence of applying such laws to individuals like Mr. Day, rendering the statutes unconstitutional as applied to him.

## II.     Background

On January 25, 2024, a Superseding indictment was returned charging Mr. Day, inter alia, with one count of possession of a firearm by a felon in violation of 18 § 922(g)(1) and one count of possession of an unregistered firearm in violation of 26 U.S.C. § 584. The superseding indictment alleges that Mr. Day was convicted of larceny in the state of Wyoming. Discovery produced in this case indicates that the government believes this conviction occurred in 1987.

## III.    Argument

The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified an individual right to possess and carry weapons, the core purpose of which is self-defense in the home. 554 U.S. 570, 628 (2008; *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right").

Prior to *Bruen*, courts generally analyzed whether a firearm restriction was constitutional using a two-step test. First, courts determined whether the regulation was consistent with analogous gun restrictions from the Nation's founding and early history. If it was, the regulation passed constitutional muster without need for further analysis. If the restriction was not consistent with this Nation's historical regulations of firearms, courts proceeded to a second step of determining whether regulation survived intermediate scrutiny. *See, e.g.*, *Duncan v. Bonta*, 19 F.4th 1087, 1096 (9th Cir. 2021) (en banc) (upholding 2-step test).

*Bruen*, however, eliminated the second step. It held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct [and] the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129. In so holding, it expressly disavowed the balancing test courts had used to determine whether laws not consistent with this Nation's historical traditions were nevertheless constitutional. It explained, "the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *Id.* Thus, any restriction on conduct covered by the plain text of the Second Amendment is unconstitutional unless the government can demonstrate that the restriction is relevantly analogous to one that existed around the time of the Nation's founding.

### A. 18 U.S.C. § 922(g)(1) violates the Second Amendment on its face and as applied to Mr. Day.

18 U.S.C. § 922(g)(1) is unconstitutional because the government cannot meet its burden to show that a tradition of disarming felons existed around the time of the founding.

Mr. Day is accused of possessing weapons and ammunition in his home for purposes of self-defense. This conduct falls squarely within the plain text of the Second Amendment. "As [the Supreme Court] explained in *Heller*, the 'textual elements' of the Second Amendment's operative clause— 'the right of the people to keep and bear Arms, shall not be infringed'—'guarantee the individual right to possess and carry weapons in case of confrontation.'" *Bruen*, 142 S. Ct. at 2134 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

Mr. Day himself is also covered by the text of the amendment, notwithstanding his prior alleged conviction. The text of the Second Amendment "codifies a 'right of the people.'" *Heller*, 554 U.S. at 579 (quoting U.S. Cont. am II). In *Heller*, the Supreme Court explained that the Bill of Rights uses the phrase "right of the people" three times—in the

First, Second, and Fourth Amendments. *Id.* The Court concluded that in all three instances, the term "the people" "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580. Thus, the plain text of the Second Amendment applies to Mr. Day, just as it applies to "all Americans." *Id.*

Having established that Mr. Day's alleged conduct is covered by the Second Amendment, the burden shifts to the government to show that barring Mr. Day from possessing firearms is consistent with firearms regulations that existed around the time of the founding. The government cannot meet this burden. Neither the federal government nor a single state barred all people convicted of felonies from possessing guns until the twentieth century. *Range*, 69 F.4th at 104. As then-Judge Amy Coney Barrett observed in a pre-*Bruen* decision: "History does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting). The Ninth Circuit has also observed, relying on a comprehensive historical review that "'one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I.'" *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013).

For this reason, numerous courts around the country have declared 18 U.S.C. § 922(g)(1) unconstitutional, including most recently Judge Levy of the Eastern District of Michigan, who found the statute unconstitutional as applied to a defendant with 37-year-old convictions for first- and second-degree murder. *United States v. Williams*, __ F. Supp. 3d __, No. 23-cr-20201 (E.D. Mich. Feb. 22, 2024). This court should do the same.

**B. 26 U.S.C. § 584 is unconstitutional on its face and as-applied to the facts here.**

Possessing a rifle with a less-than-18-inch barrel is conduct covered by the plain text of the Second Amendment. The Amendment's text protects "the right of the people to keep . . . Arms." U.S. CONST. amend. II. And "arms" includes "all firearms." *Teter v. Lopez*, 76 F.4th 938, 949 (9th Cir. 2023). It is "irrelevant" whether a given firearm "has

military value" or "[was] in existence at the time of the founding." *Id.* Rather, "all instruments that constitute bearable arms" get the Amendment's protections. *Id.* (quotations omitted). That definition equally covers a firearm with a shorter-than-18-inch barrel; such an arm is part of "all firearms." *See id.* Possessing such a firearm is thus conduct protected by the plain text of the Amendment. *See id.*

And 26 U.S.C. §§ 5845(a)(3), 5861(d), and their associated statutes burden that conduct. The statutes impose criminal penalties for noncompliance: up to ten years in prison. 26 U.S.C. § 5871. And the underlying registration scheme imposes both substantial fees and "wait times of several months to a year." James A. D'Cruz, Note, *Half-Cocked: The Regulatory Framework of Short-Barrel Firearms*, 40 HARV. J. L. & PUB. POL'Y 493, 511 (2017) (citing *Transfer Tracking*, NFA TRACKER, http://www.nfatracker.com/nfa-transfer-time-tracking/). 26 U.S.C. §§ 5845(a)(3) and 5861(d) therefore burden the Second Amendment right. *E.g.*, *Bruen*, 142 S. Ct. at 2135–36 (open-carry licensing regime burdens the right). They are therefore presumptively unconstitutional, salvageable only if the government can affirmatively prove a requisite historical tradition. *Id.*

The government will be unable to carry that burden. Short-barreled firearms were popular tools of self-defense during the Founding Era. Many blunderbusses of the period,

for instance, had barrels shorter than 18 inches.[2] Likewise for many carbines.[3] And those weapons were both "occasionally used by militaries" and "popular for self-defense," especially for people on the move like horsemen and carriage drivers. D'Cruz, *Short-Barrel Firearms*, 40 HARV. J. L. & PUB. POL'Y at 508 (citing HAROLD L. PETERSON & ROBERT ELMAN, THE GREAT GUNS 56–57 (1971)). Put simply: "[s]hort-barrel firearms . . . *did* exist at the time of the Second Amendment's drafting and ratification." *Id.* (emphasis in original).

There is, however, no history at the time of the founding of firearm registration laws carrying criminal penalties, let alone penalties for failing to register short-barreled weapons. Because the act of possessing a short-barreled firearm is covered by the plain text of the Second Amendment and because the government will not be able to show a relevantly analogous historical regulation requiring registration of such weapons, the statute is unconstitutional.

## IV.    Conclusion

For these reasons, Counts 3 and 4 of the indictment must be dismissed.

---

[2] *E.g.*, *Flintlock Muzzle-Loading Blunderbuss - By James Barbar - About 1755-60*, ROYAL ARMOURIES COLLECTIONS, https://royalarmouries.org/collection/object/object-15012 (barrel length of 12 inches) (last accessed Nov. 1, 2023); *Blunderbuss, the "Thunder Box" of the Battlefield*, AM. REV. INST., https://www.americanrevolutioninstitute.org/recent-acquisitions/english-blunderbuss/ (barrel length of 15 inches) (last accessed Nov. 1, 2023); *Flintlock Muzzle-Loading Blunderbuss - By Wheeler - About 1795*, ROYAL ARMOURIES COLLECTIONS, https://royalarmouries.org/collection/object/object-30588 (barrel length of 14 inches) (last accessed Nov. 1, 2023); *Flintlock Muzzle-Loading Blunderbuss - By J. Harding And Son - Dated 1840*, ROYAL ARMOURIES COLLECTIONS, https://royalarmouries.org/collection/object/object-15338 (barrel length of 14 inches) (last accessed Nov. 1, 2023).
[3] *E.g.*, *Flintlock muzzle-loading carbine—Short Light Cavalry Carbine (Experimental Paget Carbine) (About 1805)*, ROYAL ARMOURIES COLLECTIONS, https://royalarmouries.org/collection/object/object-567 (barrel length of 15 inches) (last accessed Nov. 1, 2023).