**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-23-08132-PCT-JJT |
|---|---|
| Plaintiff, | |
| v. | |
| Donald Day, Jr., | |
| Defendant. | |

At issue is Defendant's first Motion to Dismiss Indictment (Doc. 23),[1] to which the government has filed a Response in opposition (Doc. 27) and Defendant has filed a Reply (Doc. 28). No party requested oral argument on the motion and the Court concludes it would no benefit from same. LRCrim 12.1(a); LRCiv 7.2(f).

**I.     BACKGROUND**

On November 29, 2023, a grand jury indicted Defendant Donald Day, Jr., on two counts of making interstate threats in violation of 18 U.S.C. § 875(c). (Doc. 3.) On January 25, 2024, the United States added three other charges in an Amended Superseding Indictment. (Doc. 37.) It then obtained a Second Amended Superseding Indictment (Doc. 68, "Ind.") to add allegations to one of the other charges. The Second Amended Superseding Indictment alleges the following as to the interstate threats charges.

Defendant was active on YouTube and would regularly post videos of himself and

---

[1] Defendant subsequently filed a second Motion to Dismiss additional firearms-related charges. (Doc. 41.) That motion, which is fully briefed, remains pending.

comment on others' videos, including those of an Australian couple, Daniel and Jane.[2] (Ind. at 2.) Daniel and Jane would also often comment on Defendant's videos. (Ind. at 2.) In December 2022, Australian police officers visited Daniel and Jane's property in response to a missing person report. (Ind. at 4.) As the officers approached the residence, Daniel and Jane opened fire, killing two officers and injuring a third. (Ind. at 4.) They then filmed and posted a short video stating, "They came to kill us, and we killed them. If you don't defend yourself against these devils and demons, you're a coward. We'll see you when we get home. We'll see you at home, Don. Love you." (Ind. at 4.) Shortly afterward, Defendant commented on that video, "I tell you, family, that those bastards will regret that they ever fucked with us. . . . We, too, will never ever bow to the scum which plagues us. . . . Anything that is within my range to do for you, I will not hesitate." (Ind. at 4–5.)

Four days later, Defendant posted a video on YouTube entitled "Daniel and Jane." (Ind. at 5.) In the video, he stated, "[M]y brave brother and sister . . . have done exactly what they were supposed to do, and that is to kill these fucking devils." (Ind. at 4.) He added, "[w]ell, like my brother Daniel, like my sister Jane, it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people, we are owned by no one." (Ind. at 5.)

In a separate, apparently unrelated incident, Defendant posted a comment on an internet video in which the World Health Organization's Director General discussed the discovery of a new virus. (Ind. at 3.) Defendant's comment stated, "It is time to kill these monsters, and any who serve them. Where are my kind? Where are you? Am I the only one? Fuckin' hell!" (Ind. at 3.)

In Count 1, the United States alleged that Defendant threatened to injure "any law enforcement official who comes to [Defendant]'s residence" when he stated, "[W]ell, like my brother Daniel, like my sister Jane, it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people, we are owned by no one." (Ind. at 6.)

---

[2] The indictment refers to these two individuals as "Individual 1" and "Individual 2" but notes that they often referred to themselves as "Daniel" and "Jane." (Ind. at 2.) The Court will refer to them as such for the purposes of this Order.

In Count 2, the United States alleged that Defendant threated to injure the Director General of the World Health Organization when he stated, "It is time to kill these monsters, and any who serve them. Where are my kind? Where are you? Am I the only one? Fuckin' hell!" (Ind. at 6.)

Defendant moves to dismiss these Counts for insufficiency under Federal Rule of Criminal Procedure 7(c)(1).

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A legally sufficient indictment must state the elements of the offense with enough clarity to inform a defendant of the charge against him. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). An indictment that tracks the words of the statute charging the offense is sufficient if the words unambiguously set forth the elements of the offense. *Id.* "The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *Id.*

In ruling on a motion to dismiss an indictment, the Court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence," and "[t]he Court should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Marra*, 481 F.2d 1196, 1199–1200 (6th Cir. 1973)).

## III.    ANALYSIS

The United States charged Defendant with two counts of violating 18 U.S.C. § 875(c), which prohibits the "transmit[ion] in interstate or foreign commerce [of] any communication containing . . . any threat to injure the person of another." Defendant challenges the sufficiency of each of these charges on two grounds: (1) neither charged

statement is addressed to a "person" within the meaning of the statute, and (2) neither charged statement constitutes a "true threat." (Doc. 23, "MTD" at 3, 6.)

### A. Threats Against a Person

Defendant first argues that the indictment fails because the charged statements are not threats to injure "the person of another" as required by the plain language of the statute. (MTD at 3.) As to Count 1, he argues that "any law enforcement official who comes to [Defendant]'s residence" is "not a natural person, nor is it even a finite or bounded group of natural persons." (MTD at 4.) And he contends that the charged language of Count 2, which alleges a threat against the Director General of the World Health Organization, is more likely directed at the World Health Organization or the global public health community. (MTD at 5.)

Defendant cites one case in support of his argument: *United States v. Havelock*, 664 F.3d 1284 (9th Cir. 2012). In *Havelock*, the Ninth Circuit considered the scope of the word "person" as used in 18 U.S.C. § 876(c). Although not the statute at issue here, 18 U.S.C. § 876(c) is sufficiently similar such that the Ninth Circuit's interpretation of it may be instructive. The statute prohibits an individual from mailing a communication "addressed to any other person and containing . . . any threat to injure the person of the addressee or of another." 18 U.S.C. § 876(c).

The defendant in *Havelock* mailed letters to various media outlets in which he stated, among other things, "I will make the ultimate sacrifice; I will give my life. And I will take as many of the baneful and ruinous ones with me. . . . I will slay your children. I will shed the blood of the innocent." *Havelock*, 664 F.3d at 1287. The defendant argued that because the communications were addressed to media outlets, not natural persons, they were not "addressed to any other person" under 18 U.S.C. § 876(c). *Id.* at 1288. The Ninth Circuit agreed that "person" means a natural person as opposed to a corporate entity such as a media outlet. *Id.* at 1291. But the Ninth Circuit then moved on to analyze a separate issue: whether the communications were *addressed to* a natural person. *Id.* at 1293–96. After looking at the contents of the mailings, the Ninth Circuit determined that "a

- 4 -

reasonable jury could not have found that Havelock's writings were addressed to a natural person, as § 876(c) requires." *Id.* at 1296.

Defendant concedes that *Havelock* turned on whether the communications were "addressed to" a person, not whether Havelock made a "threat to injure" a person, but he argues that "person" must mean the same thing in either part of the sentence. (MTD at 5.) The Court agrees. Indeed, when the *Havelock* court analyzed the meaning of "person," it noted that, as a matter of statutory construction, the presumption that a given term means the same thing throughout a statute is "surely at its most vigorous when a term is repeated within a given sentence." *Id.* at 1291 (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). But even if "person" means the same thing here as it did in *Havelock*, *Havelock* does not stand for Defendant's proposition that a threat against an "undefined and indefinite group of individuals" is not a threat against natural persons. (MTD at 5.) In his argument, Defendant conflates *Havelock*'s analysis of the word "person" with its ultimate conclusion that Havelock's communications were not *addressed to* a natural person. In defining "person," the *Havelock* court held that "the term 'person,' as used in § 876(c), is limited to natural persons"—nothing more. *Havelock*, 664 F.3d at 1293. The Ninth Circuit later recognized as much when it stated, "There is nothing in the *Havelock* court's reasoning that indicates we should require a threat to be addressed to one particular, previously-identifiable person, rather than, as the statute states, 'any other person.' . . . [W]e see no reason to confine the phrase 'any other person' to anything less than its own broad terms." *United States v. Keyser*, 704 F.3d 631, 641 (9th Cir. 2012).

Accordingly, Defendant finds no support in *Havelock* for his contention that the indictment must charge a threat against "one (or more) specific, identifiable individuals." (Doc. 28, "Reply" at 5.) Rather, a sufficient indictment under 18 U.S.C. § 875(c) must merely allege a threat to injure a natural person. Defendant does not seriously contend that "any law enforcement official who comes to [Defendant]'s residence" would not be a natural person. Therefore, as to Count 1, the indictment sufficiently charges a threat against the person of another within the meaning of 18 U.S.C. § 875(c).

1    As for Count 2, Defendant argues that the alleged threat aimed at the Director
2 General of the World Health Organization—"It is time to kill these monsters"—was more
3 likely aimed at either the World Health Organization or the global public health community
4 and thus not at a natural person. However, Defendant concedes that the Director General
5 is a natural person. (MTD at 5.) The inquiry ends there. Because the Court "must accept
6 the truth of the allegations in the indictment," *Boren*, 278 F.3d at 914, the Court must accept
7 that the Director General was the subject of the alleged threat. Any contention to the
8 contrary is an argument for the jury. The indictment sufficiently alleges a threat against a
9 person as to Count 2.

**B.     True Threats**

11    Defendant also argues that the charged statements do not constitute "true threats."
12 (MTD at 6.) "True threats of violence are outside the bounds of First Amendment
13 protection and punishable as crimes." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).
14 As distinguishable from jests and hyperbole, true threats are "statements where the speaker
15 means to communicate a serious expression of an intent to commit an act of unlawful
16 violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S.
17 343, 344 (2003); *Watts v. United States*, 394 U.S. 705, 708 (1969). The issue of whether a
18 statement is a "'true threat' is a question of fact for the jury, not a question of law for the
19 court." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
20 290 F.3d 1058, 1069 (9th Cir. 2002) (quoting *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th
21 Cir. 1994)). "Alleged threats should be considered in light of their entire factual context,
22 including the surrounding events and reaction of the listeners." *United States v.
23 Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled on other grounds by
24 Planned Parenthood*, 290 F.3d at 1066–70. Thus, a court should grant a motion to dismiss
25 an indictment only if the charged language is so facially insufficient that no reasonable jury
26 could find that the language amounted to a true threat. *See United States v. Zavalidroga*,
27 No. 97-10290, 1998 WL 403361, at *1 (9th Cir. July 7, 1998).

28    In Count 1, the indictment alleges the threat, "[W]ell, like my brother Daniel, like

my sister Jane, it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people, we are owned by no one." (Ind. at 6.) In Count 2, the indictment alleges the threat, "It is time to kill these monsters, and any who serve them. Where are my kind? Where are you? Am I the only one? Fuckin' hell!" (Ind. at 6.) Defendant argues that the language alleged in Count 1 cannot be considered a true threat because it is simply a conditional statement expressing opposition to government action with which Defendant disagrees. And he argues that the language alleged in Count 2 is not an expression of intent at all. (MTD at 8.)

Defendant compares the alleged statements to two statements from precedent cases. The first comes from *United States v. Bagdasarian*, in which the defendant posted several racially charged comments online, including that Barack Obama would "have a 50 cal in the head soon." 652 F.3d 1113, 1115 (9th Cir. 2011). The second statement comes from *Watts v. United States*, in which the defendant expressed opposition to the military draft at a political rally by stating, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. 705, 706 (1969). The Courts in each case held that there was no evidence presented at trial from which the jury could have reasonably concluded that the statements were true threats. *Bagdasarian*, 652 F.3d at 1123; *Watts*, 394 U.S. at 708. In reaching these holdings, the Courts considered the context in which the defendants made each statement. *Bagdasarian*, 652 F.3d at 1123 ("Taking the two message board postings in the context of all the relevant facts and circumstances, the prosecution failed to present sufficient evidence to establish beyond a reasonable doubt that Bagdasarian had the subjective intent to threaten a presidential candidate."); *Watts*, 394 U.S. at 708 ("Taken in context, and regarding the expressly conditional nature of the statement and the reaction to listeners, we do not see how [the defendant's statements] could be interpreted" as anything other than "political hyperbole."). Defendant argues that the alleged statements are sufficiently similar such that they cannot be true threats as a matter of law.

Defendant's reliance on these cases, however, is misplaced. In each of these cases, the prosecution had the opportunity at trial to explain fully the context surrounding the

statements before the Courts later found them not to be true threats on appeal. Here, however, the United States has not yet had that chance. In fact, the United States avows in its Response that there is "additional context that will be presented at trial." (Doc. 27, "Resp." at 7.) It would be premature to dismiss Counts 1 and 2 based on any analogy to *Bagdasarian* or *Watts*.

Nevertheless, Defendant argues that Count 1 cannot be a true threat because no recipient of the threat could reasonably conclude that it expresses intent, and there is nothing the United States could present at trial "that can change the grammar of the statement" alleged in Count 2. (Reply at 7.) Defendant's argument as to Count 1 is unavailing because what a recipient could reasonably conclude is precisely the kind of factual question a jury must first decide. And his argument as to Count 2 in unpersuasive because a statement's grammar is not dispositive of its meaning. A jury may, after considering the full context of a grammatically imprecise statement, decide that it constitutes a true threat.

To be sure, in ruling on a motion to dismiss, the Court "is bound by the four corners of the indictment," and "[t]he Court should not consider evidence not appearing on [its] face." *Boren*, 278 F.3d at 914; *Jensen*, 93 F.3d at 669 (quoting *Marra*, 481 at 1199–1200). But the Court need reach beyond these limits and speculate as to what context the United States may later provide. The indictment alleges in both Counts 1 and 2 that Defendant made a statement "with the intent to communicate a true threat of violence and with recklessness as to whether the communication would be viewed as a true threat of violence." (Ind. at 6.) And because it is a question of fact whether Defendant communicated a true threat, *Planned Parenthood*, 290 F.3d at 1069, the Court must take as true the United States' allegation that he did, *Boren*, 278 F.3d at 914. The charged statements—each invoking killing—are not so facially insufficient that no reasonable jury could find the language amounted to a true threat. *See Zavalidroga*, at *1. The Court therefore concludes that the indictment sufficiently alleges true threats in Counts 1 and 2.

. . . .

For the reasons set forth above,

**IT IS ORDERED** denying Defendant's first Motion to Dismiss Indictment (Doc. 23).

Dated this 29th day of May, 2024.

_____
Honorable John J. Tuchi
United States District Judge