JON M. SANDS
Federal Public Defender
District of Arizona
250 N. 7th Avenue, Suite 600
Phoenix, Arizona 85007
Telephone: 602-382-2700

MARK RUMOLD
CA Bar #279060
JAMI JOHNSON
NY Bar #04823373
Asst. Federal Public Defender
Attorney for Defendant
mark_rumold@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | Case No. CR-23-8132-PCT-JJT |
|---|---|
| Plaintiff, | **MOTION *IN LIMINE* RE: WIEAMBILLA SHOOTING** |
| vs. | (Hearing requested) |
| Donald Day, Jr., | |
| Defendant | |

Mr. Day respectfully moves *in limine* for an order restricting the admission of evidence concerning Gareth, Nathaniel, and Stacey Train and the events that took place in Wieambilla, Queensland, Australia on December 12, 2022 (collectively, the "Wieambilla shooting" or the "shooting").

As explained below, Mr. Day requests the Court restrict evidence concerning the Wieambilla shooting to the limited statement of facts described below. *See infra* Section II(C). Carefully controlling the admissibility of evidence about the Trains and the shooting—acts for which Mr. Day bears no responsibility—is the only way to ensure that Mr. Day receives a fair trial.[1]

---

[1] This issue—of the admissibility at trial of evidence related to the Wieambilla Shooting—is sufficiently significant to the scope of parties' pretrial preparation

1

## I. BACKGROUND

Mr. Day is 60 years old and, before these charges, he lived with his wife on a ranch in Heber-Overgaard, Arizona, for approximately a decade. He and his wife were self-employed, practicing subsistence farming and selling and trading livestock. Prior to this arrest, Mr. Day had not had law enforcement contact in nearly two decades.

Mr. Day faces five federal charges—three related to alleged threats, and two related to alleged firearms violations. *See* Amended Superseding Indictment (ECF 37). But the indictment charges crimes based on Mr. Day's alleged activity; he is not charged with conspiracy, and there are no co-defendants in the case.

\*    \*    \*

On December 12, 2022—half a world away—two police officers and another individual were killed in a shooting in rural Wieambilla, Queensland, Australia. The individuals responsible for the shooting, Gareth, Nathaniel, and Stacey Train, were killed by police later that day. The Wieambilla shooting was front-page news in Australia for weeks.

Mr. Day did not know the Trains. He had never met them in person. He had, however, interacted with them online —exchanging videos and comments about their lives and other topics.

Australia has far more restrictive gun laws than does the United States and no First Amendment, and in the absence of any living Australian that Australian authorities could hold accountable for the Wieambilla shooting, those authorities expanded their net.

---

that Mr. Day respectfully requests the Court hold a hearing and consider this motion in limine on an expedited basis.

Mr. Day was ensnared in that expanded net. The online communications between the Trains and Mr. Day sparked a nearly year-long investigation into Mr. Day—first, by authorities in Australia; and, later, the United States—to determine whether Mr. Day bore any responsibility for the shooting.

He did not. No evidence exists that Mr. Day had any knowledge of the Train's plans or that he in any way encouraged or instigated the attack. Instead, the Train's actions were just that—their own. Mr. Day was never charged with a crime related to the shootings.

Nevertheless, after a year of investigation that yielded no connection to the Train's actions, the United States indicted Mr. Day. Count 1 of the indictment relates to a video Mr. Day allegedly posted on YouTube on December 16, 2022— four days after the Wieambilla shooting. Although the video was posted on December 16, 2022, the government did not indict Mr. Day for the alleged threat in the video until nearly a year later, in November 2023.

In the video, Mr. Day states that if "the devils come for us, they fucking die. It's just that simple. We are free people, we are owned by no one." Amended Indictment, ¶ 29. The government maintains this statement constitutes a threat against "any law enforcement official who comes to DAY's residence." *Id*. The video was posted in response to a video posted by the Trains on December 12, 2022. *Id*. In it, Gareth Train stated "[t]hey came to kill us, and we killed them. If you don't defend yourself against these devils and demons, you're a coward." *Id*.

*    *    *

The government has indicated—through counsel, its briefing, and through materials produced in discovery—that it intends to introduce at trial a large volume of evidence related to the Trains and the Wieambilla shooting.

For example, in its *Notice in Opposition to Severance*, the government indicated that it "intends to introduce evidence regarding the similarities in the mindset and living situation between the [the Trains] and the Defendant." *Notice* at 3 (ECF. 119). Similarly, in discovery, the government has produced eight statements from Queensland Police officers concerning "giving evidence in the prosecution of Donald Day Jr in the Federal District Court in Arizona, USA." *See, e.g.*, Exhibits 1 - 8 (Queensland Police Service, Statements of Witnesses). The statements, given by eight different QPS officers, describe, among other things, investigation taken by the Queensland Police related to the online accounts and electronic devices of the Trains; a forensic coordinator who responded to the Train's residence on December 12, 2022; and a tactical police officer who coordinated the QPS response to the events on December 12, 2022.

## II.  ARGUMENT

Strict limitations must be placed on the government's ability to introduce evidence relating to the Wieambilla shooting. Evidence about a shootout with police in which police officers were killed—events that Mr. Day was not involved with—is highly inflammatory, overly prejudicial, and of little to no relevance to these proceedings. Without strict limits, Mr. Day will not receive a fair trial.

### A. **Admitting evidence about the Wieambilla shooting would violate the First and Fifth Amendments.**

Both the First and Fifth Amendments prohibit the type of "guilt by association" that will occur if evidence of the Trains and the events of Dec. 12 is admitted in Mr. Day's trial. "[G]uilt by association is a philosophy alien to the traditions of a free society and the First Amendment itself." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982). Under the Fifth Amendment, too, "[g]uilt is personal." *Scales v. United States*, 367 U.S. 203, 224 (1961). Any association for

which criminal liability attaches "must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the Due Process Clause." *Id.* at 225 (reviewing conspiracy and accomplice liability schemes).

But, in this case, "guilt by association" is the government's strategy—explicitly. The government has already indicated it plans to introduce evidence of the "similarities in the mindset and living situation," between Mr. Day and the Trains, in addition to other evidence related to the shooting. *Notice* at 3 (ECF. 119). Having introduced those alleged "similarities" (along with the facts of the Wieambilla shooting), the government would then invite the jury to convict Mr. Day on Count 1—and all counts—based on nothing more than Mr. Day's online associations with the Trains.

The Trains are responsible for the deaths of three people. Mr. Day is not. He has not been charged with any crime relating to the Wieambilla shooting. The government should not be allowed to convict *Mr. Day* with evidence of the *Train's* guilt. Doing so would violate the prohibition on guilt by association.

B. **Evidence about the Wieambilla shooting would mislead the jury, confuse issues, waste time, and unfairly prejudice Mr. Day.**

Allowing evidence related to the Wieambilla shooting would run afoul of Rule 403, too. *See* Fed. R. Evid. 403. It would mislead the jury; it would confuse the issues and waste time; and it would be far more prejudicial than probative.

First, evidence about the shooting will mislead the jury. As described above, it will invite the jury to assume that Mr. Day shared some responsibility for the Trains' actions and that, in turn, he has liability for the threat alleged in Count 1 (and, by extension, all counts).

Second, evidence about the shootings will confuse the issues and waste time. If the government is allowed to introduce evidence related to the shootings, Mr.

Day will be forced to respond with his own evidence. Mr. Day will be forced to introduce evidence about the Trains beliefs;[2] their mental health; the circumstances of the QPS investigation of them; and the circumstances of the shooting. This investigation may include serving letters rogatory to witnesses in Australia to secure their attendance at a trial in the United States. In short, Mr. Day will be forced to undertake a defense of the *Trains* to defend his own case. That type of trial-within-a-trial would undoubtedly confuse jurors. But it would also waste time and cause significant delay. Again, Mr. Day's trial should be about *his* actions, not the actions of people he never met who lived 8,000 miles away.

Finally, the danger of unfair prejudice greatly outweighs whatever probative value might exist. Evidence of a triple-homicide, in any case, is prejudicial. Evidence of a triple-homicide committed by another person, and imputed to a defendant, is *unfairly* prejudicial. No curative or limiting jury instruction could remedy the prejudice that might attach.

C. **Any necessary "context" can be accomplished through a limited statement of facts presented by a single witness.**

Mr. Day acknowledges that, to prove the threat charges in this case, the government is permitted to introduce some evidence to provide the context necessary for the jury to evaluate the alleged threats. But that concession does not mean the government can introduce *any* evidence it wants.

---

[2] For example, Australian authorities have described the shooting as a "religiously motivated terrorist attack." The Trains, according to Australian authorities, were Christian fundamentalists who subscribed to a belief called "premillennialism." Whether the Trains were, in fact, Christian terrorists would be a subject Mr. Day would need to explore—both on cross examination and through his own witnesses.

To guard against the Constitutional and evidentiary problems described above, the Court should limit the evidence admitted about the Wieambilla shooting to a stipulated statement of facts.

This approach has multiple benefits: (1) it limits, to the extent possible, the prejudice that attaches to Mr. Day; (2) it avoids a trial-within-a-trial about the shooting; (3) it provides all the context necessary for the government to prove its case, without requiring the emotionally charged testimony of Australian law enforcement officials who were involved in the shooting or investigating it; and (4) it substantially reduces the length of the trial by eliminating the need for QPS officers to testify (and for Mr. Day to call his own witnesses concerning the Wieambilla shooting).

Accordingly, Mr. Day proposes that witnesses at trial discussing the Wieambilla shooting be limited to the following facts:[3]

> On or around December 2022, Gareth, Nathaniel, and Stacey Train were individuals living in Queensland, Australia. They maintained a YouTube account, through which they sometimes exchanged videos, comments, or otherwise communicated with Mr. Day. Mr. Day never met the Trains in person. Mr. Day referred to Nathaniel and Stacey Train as "Daniel" and "Jane."

> On December 12, 2022, the Trains were involved in a shootout with police at their home in Queensland. After the shootout, they posted a video to YouTube exhorting viewers to "defend yourself against these devils and demons." They ended the video with "see you at home, Don. Love you."

> Later that same day, the Trains were involved in another shooting with police, during which the Trains were killed.

---

[3] Each party shall be responsible for informing its witnesses of these limitations and shall instruct its witnesses not to volunteer additional information in response to questions on either direct examination or cross-examination.

Mr. Day further requests that the government be limited to presenting no more than one witness whose primary purpose is to discuss the Wieambilla shooting. Mr. Day understands that brief and occasional reference to the shooting, for example as a way of explaining why the FBI began reviewing Mr. Day's social media postings, may be necessary.

However, testimony by multiple Australian law enforcement agents—which the government has informed the defense that it intends to present—about an incident Mr. Day was not involved in, did not have advance notice of, and is not accused of inciting, assisting, or conspiring to commit—will simply distract, inflame, and prejudice the jury and risks turning the trial into a referendum on the Trains instead of a trial about whether Mr. Day's YouTube video on December 16, 2022, constitutes an interstate threat.

### III.  CONCLUSION

For all these reasons, Mr. Day respectfully requests the Court limit the admission of information about the Wieambilla shooting, as requested.

Respectfully submitted:   March 5, 2025.

JON M. SANDS
Federal Public Defender

 *s/Mark Rumold*
MARK RUMOLD
JAMI JOHNSON
Asst. Federal Public Defender