

# QUEENSLAND POLICE SERVICE
# STATEMENT OF WITNESS



QP 0125A
05/22
A5

Occurrence #: **QP2202133742**

Statement no.: **1**     Date: **21/02/2024**

**Statement of**
Name of witness: **PARTRIGE Timothy**
Date of birth: _____ Age: _____ Occupation: **Police Officer**

**Police officer taking statement**
Name: **SELF**
Rank: **Acting Superintendent**     Reg. no.: **9684**
Region/Command/Division: **Operations Support Command**     Station: **Specialist Response Group**

**Statement:**

1. On 12 December 2022, Operation Uniform CAVAN was commenced into the investigation of the murder of two Queensland Police Officers (Constable Rachel McCrow and Constable Matthew Arnold), civilian Alan Dare and three deaths in a police operation (Nathaniel, Gareth and Stacey Train) at Wieambilla, Queensland Australia. This remains an ongoing coronial investigation in Queensland, Australia.

2. I am an Acting Superintendent of the Queensland Police Service (QPS), attached to the Specialist Response Group (SRG). My substantive position is Inspector, Special Emergency Response Team (SERT). As the Superintendent SRG I am responsible for the preparedness, response capability and capacity of the QPS's police tactical group, public order unit, explosive ordnance unit and police negotiator training. I hold the deployment authority for SERT. SERT is the QPS police tactical group and is responsible for:

   - Attending high risk policing incidents or security operations,
   - Facilitating the arrest of suspected armed offenders who, through behaviour or offending, exceed the capability of general policing members, and
   - Providing the QPS with a counter terrorism capability.

3. I have 30 years policing experience, most of which has been spent in specialist roles performing both frontline and leadership or command roles. I passed selection for SERT in 1999 and performed the role of a tactical operator until 2009. In 2009, I was promoted out of SERT and returned as a SERT Inspector in 2020. During the period 2009 to 2020 I was seconded to SERT on numerous occasions to perform command roles including Senior Sergeant Tactical Commander and Inspector SERT Commander.

_____    _____    _____
(Witness's signature)    (Justice of the Peace (Qual.)/    (Signature of police officer
                        Commissioner for Declarations' signature)    preparing statement)

CONTINUED STATEMENT OF: **PARTRIGE**, **Timothy**

4. I have received and delivered training with respect to every rank and role within SERT. I have led specialist policing responses to innumerable high-risk incidents including; natural disasters, active shooter situations, barricaded suspects, high-risk arrests and terrorism incidents. I have provided police executives and commanders from every Australian police jurisdiction with training in operational leadership and incident command. I have frequently provided expert evidence in Australian courts on matters relating to officer use of force, critical incident response and incident command.

5. As SERT Commander, I determine the human resources required, equipment and vehicles to be utilised, and tactics to be employed on operational deployments. Whilst operations are ongoing, I conduct risk assessments, lead the SERT response, engage with any required resources external to SERT, and brief higher command when appropriate and required.

6. SERT possesses a range of armoured vehicles, including American-manufactured Lenco BearCat armoured vehicles, and Light Armoured Vehicles (LAV). The heavy armoured vehicles (Bearcat) and LAV's are manufactured to different standards and therefore offer different levels of ballistic protection.

7. I maintain a record of my duties in an official QPS diary and I made written notes in relation to the unfolding incident and SERT Operation on 12 December 2022 in QPS diary K30705.

   *I am able to produce a copy of QPS diary K30705 pages 168 to 184….*

8. I recall Monday 12 December 2022. On this day I was performing the role of Inspector, SERT Commander. At 1650hrs I became aware of information indicating police officers had been shot at an incident in western Queensland.

9. At 1651hrs I called the Darling Downs District Duty Officer, Senior Sergeant Esselink and was provided with the address of 251 Wains Road, Wieambilla as being the incident location. Wains Road, Wieambilla is located approximately 300 kilometres from the location where SERT Brisbane is based. I deployed some SERT operators to the scene at this time. Tactical operators then commenced travelling from Brisbane to Brisbane via armoured vehicles.

10. My inquiries revealed that 251 Wains Road, Wieambilla was a house and sheds located in a rural area surrounded by bushland. I noted that whilst there were no close neighbours, there were multiple farmhouses in the surrounding area.

11. At 1705hrs I made inquiries to access a helicopter to deploy tactical operators to this location.

(Witness's signature)   (Justice of the Peace (Qual.)/ Commissioner for Declarations' signature)   (Signature of police officer preparing statement)

CONTINUED STATEMENT OF: **PARTRIGE, Timothy**

12. At 1725hrs I was provided background information that four police officers had attended a missing person inquiry and that subsequently two officers had been shot, a third officer had managed to escape in a vehicle and a fourth officer was still somewhere on the property. A Police Forward Command Post (PFCP) had been established at Mary Road and Chinchilla-Tara Road Wieambilla. Gunshots were still being fired at this incident.

13. At 1735hrs I was advised that the helicopter Rescue 500 could transport some tactical operators to the incident scene.

14. At 1740hrs I requested the District Officer for the Western Downs District, Acting Superintendent Mowle, who was in communication with police commanders at the incident scene, to identify a suitable helicopter landing zone. I was advised that two police officers were unaccounted for, and that one female police officer was hiding in the bush.

15. At 1750hrs I contacted Acting Superintendent Mowle and was informed that on-scene police had identified a landing zone for the Rescue 500 helicopter that was transporting SERT operators. The landing zone was the intersection of Wieambilla Road and Chinchilla-Tara Road.

16. At 1803hrs I was advised that the POIs had shot a civilian at the front of 251 Wains Rd Wieambilla.

17. At 1827hrs I advised Acting Superintendent Mowle that the helicopter carrying SERT operators would arrive at 1900hrs and that armoured vehicles were still 90 minutes away. I discussed with him the female police officer who was hiding in bushland and directed that she be advised to remain concealed. I advised Acting Superintendent Mowle that if the female officer's position was compromised by the persons of interest (POIs), that they would kill her. I recommended that if she was forced to reveal herself to the POIs, the commanding officer on scene was to consider ordering available police to commit an 'emergency action'.

18. An 'emergency action' is a tactical action police are forced to execute in response to an offender's act or behaviour which risks causing grievous bodily harm or death to another person. An emergency action is a particularly high-risk activity especially for the officers tasked with undertaking it.

19. At 1833hrs I was advised that a civilian had been located deceased outside the front gate of 251 Wains Rd Wieambilla.

20. At 1841hrs I communicated via radio with all SERT operators and detailed their mission and my priorities for them upon their arrival at the scene.

21. At 1851hrs I received advice that two police officers were confirmed deceased at the scene.

(Witness's signature)    (Justice of the Peace (Qual.)/    (Signature of police officer
                          Commissioner for Declarations' signature)    preparing statement)

CONTINUED STATEMENT OF: **PARTRIGE**, Timothy

22. At 1853hrs I received advice that the female officer hiding in the bush had been recovered alive.

23. At 1856hrs I received conflicting advice from Acting Superintendent Mowle that one of the injured officers may still be alive with a gunshot wound. I discussed the legislative provisions concerning police use of force during any effort to recover that officer.

24. At 1900hrs I was advised by Acting Superintendent Mowle that both officers had been recovered and that one was injured, and one was deceased and that the offenders appeared to be in the area of operation.

25. At 1901hrs I received advice confirming that two police officers and one civilian were deceased at the incident scene.

26. Due to the recovery of the officers and confirmation that the civilian was deceased, I amended the mission and priorities for SERT operators. At 1914hrs I communicated these amendments to all SERT operators.

27. At 1938hrs I was advised that SERT operators had been dropped at the scene by helicopter. By 2011hrs SERT operators in armoured vehicles had arrived at the scene and the BearCat commenced moving forward. At this time, I was aware that night had fallen, there were numerous fires (lit by the POIs) surrounding the incident location, the property was surrounded by bushland and access to the property had been complicated by police vehicles abandoned during the incident.

28. At 2051hrs I arrived at the police forward command post and established that SERT operators were still in the process of moving to containment positions. All operators had moved forward of the command post and were in the process of surrounding the POIs. I was also advised by QPS PolAir helicopter that a POI was lying on the ground with a rifle with sights.

29. On the evening of 12 December 2022, SERT operators were only able to receive a limited number of poor standard still images from PolAir of the offenders positions whilst shooting at police.

    *I am able to produce two still images provided by Polair on 12 December 2022 of the offenders shooting at QPS SERT operatives .....*

30. I directed SERT Operative (SO)35 that I wanted tight containment of the incident location. Due to the darkness, unfamiliarity of the terrain, smoke in the area, and rural location, I recall being extremely concerned about the SERT operators' ability to maintain the integrity of the cordon. I believed that if the POIs breached the cordon, more innocent members of the public would be shot and killed.

31. At 2100hrs I was advised by SO114 that bushland around the property was on fire.

(Witness's signature)    (Justice of the Peace (Qual.)/ Commissioner for Declarations' signature)    (Signature of police officer preparing statement)

QP 0125A Statement of Witness Justices Act Acknowledgement    Page 4 of 7

CONTINUED STATEMENT OF: **PARTRIGE**, Timothy

32. At 2105 hrs I formally took over command of the inner cordon from the Police Forward Commander, Inspector Rasmussen.

33. At 2110hrs I was advised by SO35 that SERT had contained the incident scene with QPS PolAir helicopters confirming three POIs at the front of the house. I approved the negotiator team leader to call the POIs via telephone.

34. At 2113hrs I was advised that the POIs were shooting from the front of the house.

35. At 2114hrs I was advised by the negotiator team leader that the POIs' phones were off.

36. At 2115hrs I was advised that there were two male POIs and one female POI present and that the two males were shooting towards police.

37. At 2119hrs the negotiators again advised that all POIs' mobile phones were off.

38. At 2120hrs I was advised by PolAir that the POIs were discharging firearms towards the front of the house and reloading from the rear of a vehicle parked beside the house.

39. At 2123hrs I was advised that two shots had been fired into the Bearcat.

40. At 2130hrs I remained concerned about the integrity of the SERT cordon and the grave risk to the public should they breach the cordon. I advised SO35 of these concerns. I then made a mobile telephone call, with SO35, to SO114 who was in the BearCat and directed him to move forward to ensure the POIs could not breach the cordon. I directed SO114 that if the POIs chose to surrender, to take them into custody peacefully, if not SERT operators were to deal with the threat.

41. At 2134hrs the negotiators advised that there was still no contact with the POIs possible via landline or mobile phones.

42. I continued to be briefed by PolAir of shots being fired at police by the POIs from the front of the house.

43. At 2145hrs I was advised that the negotiators were preparing a 'throw phone' and that shots were still being fired from the POIs positioned at the front of the house. (A 'throw phone' is a phone capable of being delivered (sometimes thrown) to a barricaded suspect to facilitate negotiations).

44. At 2155hrs I remained concerned of the substantial threat posed by the offenders going mobile and I directed SO35 to move SERT operators forward to get a negotiation platform and to remove the POIs ability to escape by vehicle.

_____    _____    _____
(Witness's signature)                          (Justice of the Peace (Qual.)/                    (Signature of police officer
                                               Commissioner for Declarations' signature)         preparing statement)

CONTINUED STATEMENT OF: **PARTRIGE**, Timothy

45. At 2156hrs I again advised SO35 of my concerns about the POIs going mobile and directed him to move operators forward into effective interception positions.

46. I continued to receive reports of shots fired towards the SERT armoured vehicles from both the front and right hand side of the property.

47. At 2204hrs I was advised that POI 1 (Gareth Train) had been wounded.

48. At 2205hrs I was advised that the BearCat had been hit by more shots fired by the POIs.

49. Gunshots towards SERT armoured vehicles continued, and at 2230hrs I was advised that POI 1 was no longer moving.

50. At 2235hrs I was advised that SERT operators had engaged the female POI.

51. At 2236hrs I as advised that POI 2 (Nathaniel Train) was continuing to fire towards SERT armoured vehicles.

52. At 2241hrs I was advised that there was no movement from POI 2.

53. At 2251hrs I arrived at the house with Queensland Ambulance Service officers and observed that SERT medics were working on the three POIs.

54. Throughout this incident I received constant commentary from PolAir concerning the POIs shooting at SERT operators. I could also hear gunfire over the police radio network.

55. Throughout this incident, a police negotiator who was located in the BearCat, attempted to contact the POIs and establish communication by making repeated appeals via a Long Range Acoustic Device.

56. Throughout this incident, police negotiators located at the police forward command post attempted to contact the POIs via all telephone numbers known by police to be linked to them.

57. Whilst I was in command of this incident, I was aware that the POIs had lit fires to bushland encircling the house on their property thereby restricting approach routes to the house. I was also aware that the POIs had established a roadblock of logs and other material on a bend in their driveway which was positioned at a point where the driveway emerged from bush into line-of-sight of the house. As SERT operators were approaching the property, I heard PolAir radio communications describing the POIs location and behaviour (seated, outside the house). As SERT armoured vehicles moved into visibility of the house, and encountered the roadblock, the POIs fired on police with large calibre rifles mounted with telescopic sights enabling extreme accuracy. Upon resolution of the incident, I noted that the firing positions of POIs 1 and

(Witness's signature)     (Justice of the Peace (Qual.)/ Commissioner for Declarations' signature)     (Signature of police officer preparing statement)

CONTINUED STATEMENT OF: **PARTRIGE, Timothy**

2 (Gareth and Nathanial Train) were fortified and had been prepared to offer comfort and easy access to ammunition. I am also aware that the POIs had strategically placed mirrors around their property in an effort to reflect light and disorient responding SERT operators. My observations on the night and my training and experience in counterterrorism and tactical policing has led me to form the views that the POIs were anticipating a tactical police response and were awaiting their approach to the house; and that the POIs attempted to funnel responding SERT operators into pre-planned arcs of gunfire.

58. The POIs maintained a high rate of gunfire at police throughout the incident, despite being wounded, until they were killed by SERT operators who were forced to defend themselves.

59. The POIs persistent shooting at police, their fortified firing positions, their refusal to negotiate, their preparation for police attendance, the co-ordination of their attack, and their use of large calibre weapons with telescopic sights and ample ammunition, demonstrated their resolve and preparedness which created an extreme risk of injury or death to responding SERT operators. In my 25 years' experience in tactical policing, I have not encountered a situation where I felt a greater level of threat towards responding police officers and the community.

Timothy Partrige
Acting Superintendent

---

### Justices Act 1886

I acknowledge by virtue of section 110A(6C)(c) of the *Justices Act 1886* that:

(1) This written statement by me dated **21/02/2024** and contained in the pages numbered 1 to 7 is true to the best of my knowledge and belief; and

(2) I make this statement knowing that I may be liable to prosecution for stating in it anything that I know is false

_____ Signature

Signed at __**Brisbane**__ this **21st** day of __**February**__, __**2021**__
        (place)              (day)              (month)              (year)

---

(Witness's signature)    (Justice of the Peace (Qual.)/    (Signature of police officer
                          Commissioner for Declarations' signature)    preparing statement)