TIMOTHY COURCHAINE
United States Attorney
District of Arizona

DAVID A. PIMSNER
Arizona State Bar No. 007480
ABBIE S. BROUGHTON
California State Bar No. 226680
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: david.pimsner@usdoj.gov
Email: Abbie.Broughton@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Donald Day Jr.,<br><br>　　　　　Defendant. | CR-23-08132-PCT-JJT<br><br>**UNITED STATES' RESPONSE TO MOTION IN LIMINE RE: WIEAMBILLA SHOOTING** |

　　　Defendant has moved to limit evidence regarding the ambush shooting of two Queensland Police Service ("QPS") Constables in Wieambilla, Australia in December 2022. Evidence of the circumstances around those murders is relevant, admissible, and not unduly prejudicial as it is necessary to explain the context of the threat charged in Count One. An appropriately sanitized version of this evidence is relevant and admissible to prove the meaning behind Defendant's threat made via YouTube video. Evidence derived from the investigation of the murders in Wieambilla is inextricably intertwined and probative of the requisite intent or knowledge and reckless disregard that a threat was being conveyed and the context that it was a threat to kill law enforcement. Because the government is not arguing any culpability for the acts in Australia, a limiting instruction will ensure the jury is not confused or misled and that the Defendant is not unduly prejudiced.

**Background**

As detailed in the Indictment, on December 12, 2022, three individuals—Gareth, Stacy, and Nathaniel Train (The Trains) while living on a rural property in Wieambilla, Queensland, Australia ambushed and murdered two Queensland Police Service (QPS) constables and a neighbor. The three Australian perpetrators were ultimately killed in an hours-long shoot-out with Queensland law enforcement. A search of the property after the murders revealed tactical hides and other tactical shooting positions, numerous firearms, and cell phones with content showing that Defendant had been communicating with the individuals in the months leading up to the murders. Evidence shows that Defendant and the Trains had been communicating using pseudonyms- "Daniel and Jane" for the Trains, and "Don and Annie" for Defendant and his partner, S.S. These communications began over a year prior to the Wiemabilla shootings and were numerous, lengthy and frequent The communications included long philosophical, and ideology driven communications posted publicly but responsive to each other's ideas. Many of these communications discuss a desire to confront law enforcement. The relationship began in May 2021, when Gareth Train posted a comment saying he had been following Defendant's YouTube for the past year. Defendant and his common-law wife S.S. began communicating with the Trains online posting videos and comments with regularity between 2021 and 2022, culminating in the communications relevant for this trial. Based on search warrant returns there were at least 37 communications between the Defendant and the trains in the three months leading up to charges here. The government is seeking to introduce only a small fraction to establish context.

The Trains posted a video on the night of the murders, between the time the constables were killed and the arrival of additional Australian law enforcement. That video titled, "Don't Be Afraid" was posted to the Train's YouTube channel. In the video, which lasted 41 seconds, the Trains filmed themselves in a dark setting and stated, "**[t]hey** came to kill us, and **we killed them**. If you don't defend yourself against these **devils and**

**demons**, you're a coward. We'll see you when we get home. We'll see you at home, Don. Love you." (emphasis added).

Soon thereafter, Defendant posted a comment to the video "Don't Be Afraid" under the username "Geronimo's Bones." Defendant stated, "[t]ruly, from my core, I so wish that I could be with you to do what I do best. I hate it, that I am unable to. What can I do? I tell you, family, that those bastards will regret that they ever fucked with us. Although I cannot be there under my own power and will, the comfort and assurance that I can offer, is that our enemies will become afraid of us. We are with you. We too, will never ever bow to the scum which plagues us. It is rare for me to ask our Father for anything. Yet as soon as I saw this comm, I did ask Him for something. Please, do what you must do, with determination in your hand and fury in your bellies. Again, tell me that I can help you. Anything that is within my range to do for you, I will not hesitate. We love you, we care for you. -Don and Annie."

On December 16, 2022, Defendant posted a video titled, "Daniel and Jane" to his YouTube channel under username "Geronimo's Bones." In the video, Defendant stated, "it breaks my fucking heart that there's nothing that I can do to help them. These are a people that are not armed, as we are in America, that at least have that one resort to fight against fucking tyrants in this country. And here, my brave brother and sister, a son and a daughter of the Most High have done exactly what they were supposed to do, and that is to kill these fucking devils."

Defendant then stated, **"[w]ell, like my brother Daniel, like my sister Jane, it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people, We are owned by no one."** Defendant ended the video saying, "Daniel, Jane, if there's any way possible that you are receiving this comm, I am so sorry that I'm not there to fight with you, that there's no fucking way for me to be there, and I'm reduced to asking my Father to protect you, to look out for you without any expectation, but if you're already home, our heavenly home, hold a place for us because we'll be joining you soon enough."

On December 1, 2024, Defendant was arrested for making online threats, specifically including the bolded language above. A search of the remote property he shared with his common law wife in Heber, Arizona after his arrest revealed nine firearms, numerous magazines, and tens of thousands of rounds of ammunition. Defendant's property also had a firing range and a Conex container with sandbags positioned as an elevated shooting platform.

At trial, the Government intends to offer evidence showing, among other things: the relationship between Defendant and the Trains, the similarities between the Trains' property and Defendant's property, a limited explanation of the events that took place on December 12, 2022, as it related to Defendant's threat, evidence of communication between Defendant and the Trains, including language explanatory of the terms used in Count One.

At issue here is the admission of evidence relevant to prove Count One of the Second Superseding Indictment. The United States intends to call witnesses to the events in Australia and those who gathered evidence at the scene on the Trains' property and conducted the digital analysis of the electronic evidence. The United States also intends to introduce photographic and digital evidence directly related to the language used in Defendant's threat, to help the jury understand the context of the terms "devils"—law enforcement, the intended victim of the threat—and to understand the meaning of the language "like my brother Daniel, like my sister Jane"—referencing those who had engaged in the murder of law enforcement.

The government plans to call the following witnesses, all employed by Queensland Police Service:

- <u>QPS Sergeant Andrew Gates</u>: to offer testimony regarding entering the scene at the Trains' property and describing in limited detail the condition of the scene after two officers and one neighbor were killed.
- <u>Forensic Coordinator QPS Senior Sergeant Kirsty Gleeson</u>: to offer testimony regarding gathering of evidence from the scene including a general overview of the Trains' property, location of strategic shooting locations or "hides"

where the shooting of the QPS Constables occurred and recovery of electronic evidence (Stacy Train's cell phone) containing evidence of communication with Defendant.

- <u>Digital Forensic Analyst QPS Senior Constable Jason Neems</u>: to offer testimony regarding brute force methods to begin extraction of Stacy Train's iPhone.
- <u>Digital Forensic Analyst QPS Senior Constable Stewart Costello</u>: to offer evidence as the lead analyst in the extraction of Stacy Train's iPhone.
- <u>Detective Sergeant Daniel Pollard, Security and Counter Terrorism Command</u>: to offer testimony regarding the Investigation in Queensland and the Cellebrite extraction and analysis of digital evidence recovered from Stacy Train's iPhone.
- <u>FBI Special Agent Thomas Phillips</u>: among other testimony, the United States anticipates Agent Phillips will testify regarding the YouTube and Google search warrant returns including of Defendant's videos and communications with the Trains. Agent Phillips will also testify regarding online comments made by Defendant regarding possession of firearms and desire to use them. He is included in this list to the extent that evidence relates to the events in Australia.

The government plans to use the following photographic, demonstrative, or digital evidence at trial[1]:

- You Tube comment between the Trains and Defendant (showing timeline of relationship between them)

---

[1] This is not an exhaustive list of all evidence the government will seek to admit for context to Count One. For purposes of the response to this motion, the undersigned has focused on evidence directly related to the Trains and the shooting in Wieambilla. There are other comments and videos posted by Defendant that are relevant and admissible for context, such as comments regarding gun use and ownership. A second motion detailing the admissibility of those items will be filed separately as it is not directly responsive to the motion at issue.

- o **Exhibit 1**: Train's comment about following Defendant (Bates DEFENDANT_000563)
- **Exhibit 2**: Map of Train's Property (Bates DEFENDANT_007439)
- Photos from the Train's Queensland Property
    - o **Exhibit 3**: Gate area-still from video (Bates DEFENDANT_007986)
    - o **Exhibit 4**: Road on Train's property (Bates DEFENDANT_007595)
    - o **Exhibit 5 and 6**: Hide on Train's property: (Bates DEFENDANT_007547 and DEFENDANT_007557)
    - o **Exhibit 7**: Strategic position near house (Bates DEFENDANT_007619)
    - o **Exhibit 8**: Phone location/recovery (Bates DEFENDANT_007826)
- Videos recovered from Stacy Train's Phone
    - o **Exhibit 9**: "Crossed the Rubicon" (Bates DEFENDANT_08082)
    - o **Exhibit 10**: "Our Enemies Daniel" (Bates DEFENDANT_005014)
- Screenshots recovered from Stacy Train's phone
    - o **Exhibit 11**: 5003_3-Defendant's August 23, 2022, comment to "wolves at the door" video (DEFENDANT_008268)
    - o **Exhibit 12**: 5003_16 Defendant's December 8, 2022, YouTube comments to "Daniel's message to the Bad Boys" (DEFENDANT_008268)
    - o **Exhibit 13**: 5003_14-Defendant's December 8, 2022, comment to "bad boys" video (DEFENDANT_008268)
    - o **Exhibit 14**: 5003_20-Defendant's December 9, 2022, comment to "cowardice" video (DEFENDANT_008268)

- **Exhibit 15**: "Don't Be Afraid" You Tube video communication from the Trains to Defendant on December 12, 2022. (Bates DEFENDANT_00002286).
- **Exhibit 16**: Gmail with You Tube comments made by Defendant on the Train's December 12, 2022 "Don't Be Afraid" video (Bates DEFENDANT_00563).
- **Exhibit 17**: "Daniel and Jane" December 16, 2022, You Tube video posted by Defendant (Bates DEFENDANT_002471)
- Photos of Defendant's Property
  - **Exhibit 18 and 19**: gate and signage (Bates DEFENDANT_010710 and DEFENDANT_010720)
  - **Exhibit 20**: shooting range (Bates DEFENDANT_011046)
  - **Exhibit 21**: sniper position (Bates DEFENDANT_11033)
  - **Exhibit 22**: firearms at Defendant's residence (Bates DEFENDANT_010750)

Witness Statements and copies of each of these items have been provided to defense counsel in discovery and the witness statements were made exhibits to defendant's motion. The government will provide the Court with a copy of these images and videos as exhibits for the Court's review.

## Argument

**I.      Summary of Argument**

The highly probative nature of the context evidence presented as testimony and digital and video evidence is not outweighed, much less substantially outweighed, by a risk of unfair prejudice given the crimes with which he is charged. To reduce any possible prejudice, the government (i) selected a relatively small sampling of the numerous images and videos Defendant shared to use at trial, (ii) proposes limited testimony from witnesses

regarding events in Australia (iii) and has significantly limited its selection of other videos and communications with the Trains.

The proffered evidence is not only relevant context evidence, but also inextricably intertwined with the charged offenses.

To the extent this Court views any of the proffered evidence as "other acts" evidence pursuant to 404(b), it is admissible because it goes to knowledge or reckless disregard, intent, and motive.

## II.     Applicable Law

### a.  Jury Instruction 875(c)

In order to prove Count One of the Indictment, Transmitting an Interstate Threat, the United States must prove the following:

>   **First**, the defendant knowingly transmitted a comment in interstate commerce containing a threat to injure or kill a particular individual or group of individuals.
>
>   **Second**, the comments were transmitted for the purpose of issuing a threat with knowledge or reckless disregard of the substantial risk that his communications would be viewed as threatening violence.

Modified Ninth Circuit Model Jury Instruction-modified after *Counterman v. Colorado*, 143 S. Ct. 2106, 2118 (2023).

The government need not prove that the defendant intended to carry out the threat. *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012). A true threat is a serious expression conveying that a speaker means to commit an act of unlawful violence to a particular individual or group of individuals. *Virginia v. Black* 538 U.S. 343, 359 (2003). The term "true" distinguishes what is at issue from jests, hyperbole, or other statements that when taken in context do not convey a real possibility that violence will follow. *Watts v. United States* 394 U.S. 705, 708 (1969). In a criminal prosecution for "true threats" the First Amendment requires the government to prove that the defendant understood the

threatening nature of his statement. *Counterman v. Colorado*, 143 S. Ct. 2106, 2118 (2023). Recklessness is when a defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman v. Colorado*, 143 S. Ct. 2106, 2118 (2023).

### b. Federal Rules of Evidence 401, 402, and 403

Evidence that has "any tendency to make a fact more or less probable than it would be without the evidence; and … is of consequence in determining the action" is relevant and relevant evidence is presumed admissible unless provided otherwise. *See* Fed. R. Evid. 401 & 402. Such evidence should be admitted unless the court concludes that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403. Context evidence, evidence regarding possession of firearms, and prior acts evidence have all been held to be admissible in prosecutions for making threats. *See United States v. Sutcliffe* 505 F.3d 944, 958-959 (9th Cir. 2007) (Evidence that defendant possessed a rifle, bayonet, and ammunition during the time in which he transmitted his threats was relevant to prove intent to threaten and a limiting instruction prevented undue prejudice or confusion); *United States v. Levison* 418 F.2d 624 (9th Cir. 1969) (Evidence of prior threatening phone calls to former wife regarding the victim was properly admissible to prove intent); *United States v. Ingraham*, 832 F.2d 229, 233 (1st Cir. 1987) (In 875(c) trial, extrinsic evidence in the form of prior letters were properly admitted to prove identity and "[w]hile there is no question that the letters were incriminating, they were not unfairly so." *See also United States v. Liesse* No. 20-10096, 2021 WL 5275819, at *2–3 (9th Cir. Nov. 12, 2021) (The admission of context evidence around threatening calls including trips to the bank location where the victims worked and homophobic statements in notes were probative of defendant's subjective intent and not unfairly prejudicial.)

### c. Context evidence is admissible in threat cases

Content and context are both important in determining whether a statement is a true threat. *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists, 290 F.3d 1058, (9th Cir. 2002)*; *Fogel v. Collins,* 531 F.3d 824, 831-32 (9th Cir. 2008). Context may sometimes render threatening a statement that would otherwise appear benign. *See, e.g.*, *Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 52 (2d Cir. 2016) ("Context is crucial to identification of a true threat....The context here bespeaks danger."); *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011) (en banc) ("[T]he content of these four communications examined in the context in which they were made could enable a reasonable jury to find that each communication constituted a true threat under the law."); *United States v. Alaboud,* 347 F.3d 1293, 1298 (11th Cir. 2003) ("The fact-finder must look at the context in which the communication was made to determine if the communication would cause a reasonable person to construe it as a serious intention to inflict bodily harm."); *United States v. Hart*, 212 F.3d 1067, 1072 (8th Cir. 2001) (holding that given context and manner in which Ryder trucks were placed in abortion clinic driveways after Oklahoma City bombing, jury could find that the defendant's conduct constituted a true threat); *Orozco-Santillan*, 903 F.2d at 1265 ("Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners."). Context may include the tone used by the speaker. *See United States v. Fulmer*, 108 F.3d 1486, 1495-1496 (3rd Cir. 2009) (holding that, "[w]here a statement may be ambiguous, the entire context, including the tone used, may assist the jury in determining whether that ambiguous statement was a threat").

In *Planned Parenthood*, the Ninth Circuit held that wanted posters directed at physicians who worked at abortion clinics constituted a "true threat" reasoning that context of prior deadly shootings of other physicians named on similar posters made the statements on posters at issue threatening. 290 F.3d at 1078-80 at 1085. The Court also reasoned that the amount of testimony required to establish the context has not been limited, and courts and juries should "consider the whole factual context and all of the circumstances to

determine whether a statement is a true threat." *Id* at 1078 (internal citations omitted).

### d. 404(b) and Inextricably Intertwined Evidence

While other act evidence is inadmissible to prove character, it is admissible to prove, inter alia, intent, preparation, and lack of accident, Fed. R. Evid. 404(b), if it tends to establish a material point, is not too remote in time, is based on sufficient evidence, and, at times, is similar to the offense charged, *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019). However, evidence that is "inextricably intertwined" with the underlying offense is exempt from the requirements of Rule 404(b). *Id.*

Evidence is "inextricably intertwined" when (1) it constitutes a portion of the transaction giving rise to the criminal charge; or (2) it is necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Courts should look to temporal proximity, substantive similarly, and contextual explanation when determining that evidence is inextricably intertwined. *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (admitting evidence of looking for a restaurant to burglarize as inextricably intertwined context evidence where it gave the "context in which the charged crime occurred." (internal citation omitted).) 404(b) analysis is not required when evidence actually "inextricably intertwined" with the charged offense. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).

## III. Analysis

### a. Background Evidence Used to Explain the Charged Threat is Relevant and Admissible.

First, this evidence provides necessary background and context information. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (holding "evidence that provides background information … properly is admitted 'to furnish an explanation of the understanding or intent with which certain acts were performed'") (citation omitted). This background includes the relationship between Defendant and the Trains to establish to

context of their communication. Evidence regarding the length and frequency of their communications is not unduly prejudicial to Defendant and it is important for the jury to understand the relationship between Defendant and the Trains. Some of this evidence can be elicited only through Detective Sergeant Pollard, who analyzed the digital evidence recovered after the Wiembilla killings. Other evidence regarding Defendant's communications with the Trains will be elicited through FBI Special Agent Thomas Phillips, the case agent in this case. Defendant suggests in his motion that this relationship be characterized or limited to a summary of the Trains including the following: "they maintained a YouTube account, through which they sometimes exchanged videos, comments, or otherwise communicated with Mr. Defendant. Mr. Defendant never met the Trains in person." (Doc. 121 p.7.) While these facts are correct, the use of the word "sometimes" is itself unclear and potentially misleading to the jury. Testimony regarding the timeline of their communications and a limited example of communications is a more complete and accurate way to describe the relationship. It is not unduly prejudicial to offer limited evidence of the length and frequency of the relationship and offer limited examples of the communications that go directly to explain and define the charged threat. The selected examples of communications include communications regarding law enforcement and thus also help establish language used in the threat itself and are helpful in describing the identity of the threatened group.

Second, this evidence proves Defendant's motive and intent. The United States has the burden to prove that the defendant understood the threatening nature of his statement. *Counterman v. Colorado*, 143 S. Ct. 2106, 2118 (2023). Taken without context, Defendant's words may be a statement that he wants to kill devils like his sister and brother. That does not accurately convey the meaning or intent of his words. The government must prove what defendant meant when he said, "like my brother Daniel, like my sister Jane". Defendant agrees via his proposed facts that there was a shooting is relevant and admissible. Additional evidence regarding the circumstances of the shooting beyond what is suggested by defense is relevant to prove what the Defendant meant to convey.

Without information about what his "brother Daniel and sister Jane" did to the "devils", the jury will not be able to determine Defendant's motive or intent. The government must prove the identity of the group being threatened. "Devils" equating to law enforcement in Defendant's threat is directly explained by both the language of the Train's video and the actions taken by the Trains on their property in Australia. The limitation suggested by defendant to "On December 12, 2022, the Trains were *involved* in a shootout with police at their home in Queensland. After the shootout, they posted a video to YouTube exhorting viewers to "defend yourself against these devils and demons," is overly limited. (Doc. 121 p. 7.)  The Train's ambushed the four officers that entered their gate on a routine call. While the government agrees that Defendant is not on trial for the Train's actions, an over-sanitization implying the Train's only defended themselves in a "shootout" is misleading. Testimony regarding the reason for the call to the property, the location where the Trains were positioned, and who fired first is relevant to the meaning behind Defendant's threat. Like the evidence of other murders in *Planned Parenthood*, the fact that other similar people to the group being threatened were killed, and some testimony regarding the manner of that killing is highly relevant to the meaning of Defendant's words and his motive and intent in posting them online.

Third, this evidence shows Defendant's knowledge or reckless disregard. The government must prove *mens rea*—"knowledge or reckless disregard" that defendant intended to convey a threat. The defendant's relationship, communications, and knowledge regarding the fact that the Trains ambushed and killed police officers entering their property goes directly to his state of mind when making the video threat.

**b. Testimonial evidence regarding events in Australia provides context and is directly relevant to the charges.**

As detailed above, the United States intends to call five QPS witnesses to testify regarding the events in Australia. Testimony from QPS Sergeant Andrew Gates will describe his experience arriving on scene and the location of the ambush shooting of the four QPS constables. Limited photographs and a map of the Train's property would be

admitted through his testimony. Testimony from Forensic Coordinator QPS Senior Sergeant Kirsty Gleeson will have some overlap with Sergeant Gates, but she arrived on the scene much later, after all events had concluded. Her testimony will include the map she prepared detailing the locations of the photographs offered and the crucial element of recovery of the cell phone that led to the discovery of Defendant's online posts and communications with the Trains. Digital Forensic Analyst QPS Senior Constable Jason Neems, Digital Forensic Analyst QPS Senior Constable Stewart Costello, and Detective Sergeant Daniel Pollard, will all offer testimony regarding the process of the cell phone extraction and analysis of digital evidence recovered from Stacy Train's iPhone. Stacy Train's phone included saved videos, emails, and screenshots of communications with Defendant. Detective Pollard is one of the case agents on the investigation in Queensland, and he did the analysis of the phone and other online communications.

Defendant has requested that testimony regarding the Wieambilla murders be limited to one witness. The evidence obtained, specifically the communications saved on Stacy Train's iphone, that led to the investigation into Defendant requires testimony of four witnesses: one witness to testify regarding the recovery of the phone, two forensic witnesses to explain the extraction and chain of custody, and one to testify regarding the analysis and referral to United States officials. If Defendant is willing to stipulate to that chain of custody and foundational extraction testimony and the admissibility of the pertinent items from Stacy Train's phone, it could limit the need for multiple witnesses.

**c. Digital and photographic evidence regarding events in Australia provides context and is directly relevant to the charges.**

Photos of the Train's property are relevant to describe events and to show the similarities with Defendant's property. Those similarities are relevant to Defendant's state of mind, intent, knowledge and the context of his threat, "like my brother…it is no different for us." What the Train's did on their property is directly relevant to explain Defendant's statement. Like the Trains, Defendant did not want law enforcement to enter his property and he viewed any law enforcement as the enemy, a devil or demon. The similarities

between how the Trains and Defendant lived; how they guarded their property, how they planned to use violence, including firearms, on anyone who entered all go to explain the context of the threat Defendant posted on YouTube.

### d. Inextricably Intertwined or 404(b)

The evidence described above and attached as exhibits here is inextricably intertwined. It constitutes a portion of the transaction giving rise to the criminal charge and it is necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1012.  The limited testimony of the QPS officers involved in the recovery of Stacy Train's phone and the investigation of the link to Defendant is part of the investigation in this case. The contents of Stacy Train's phone and evidence of the relationship between the Train's and Defendant is necessary to describe the meaning of Defendant's words and his intent of the threat in this case. The comments selected from Stacy Train's phone were made close in time to both the events in Wieambilla and Defendant's threat. Evidence of the Defendant's own property being similar to the Train's is also part of the coherent explanation for his behaviors and his purpose in posting his videos. Where evidence is inextricably intertwined, the Court need not conduct a 404(b) analysis. *Soliman*, 813 F.2d at 279. But to the extent this Court views the offered evidence as prior acts evidence, it is still admissible because it establishes a material point, is not too remote in time, is based on sufficient evidence, and, at times, is similar to the offense charged, *Carpenter*, 923 F.3d at 1180–81. Here evidence of the Train's relationship with Defendant, and the acts carried out towards law enforcement officers entering their gate establishes the meaning of Defendant's comments and the intent behind the threat.  The evidence is not remote in time, most of the offered evidence having been gathered just Defendants before the charged offense.  Witnesses will be present to present the reliability of the offered evidence and the Train's conduct, while more deadly in action, is similar to the meaning behind Defendant's words.  This evidence should be admitted, even if the court finds that the correct analysis is one under 404(b).

### e. Limiting instruction

Contrary to Defendant's assertion, the United States is not attempting to prove that Defendant bears responsibility for the Train's actions in this case. And while the Train's actions were violent and reprehensible, they are relevant to explain Defendant's threat. Here, where there is some risk that a jury might impugn Defendant for Train's actions, a limiting instruction will prevent prejudice when this evidence is introduced. Evidence at trial is often admitted for a limited purpose, accompanied by a limiting instruction. Our "legal system presumes that jurors will 'attend closely the particular language of [such] instructions in a criminal case and strive to understand, make sense of, and follow' them." *Samia v. United States.* 559 U.S. 635, 646  (2023)*citing United States v. Olano*, 507 U.S. 725, 740.  A limiting instruction here could be crafted to the effect:

> Mr. Day is not charged with a crime for the killing of the two law enforcement officers and one civilian in Wieambilla, Queensland, Australia in December 2022. Any evidence you hear regarding that event is to be considered solely for the purpose of determining [the meaning behind Defendant's statement in Count One, Defendant's intent, knowledge, or reckless disregard that his words would be viewed as a threat.]  You must not consider this evidence for any other purpose.

Such an instruction will make clear the purpose for which the evidence is offered and protect Defendant from the risks he raises in his motion.

### **Conclusion**

For all these reasons, evidence relating to the Trains and the murders on their Wieambilla property should be admitted as detailed above with an appropriate limiting

//
//

instruction. The United States does not oppose limiting the number of witnesses from QPS with an appropriate stipulation to the admissibility of the digital evidence.

Respectfully submitted this 19th Defendant of March, 2025.

> TIMOTHY COURCHAINE
> United States Attorney
> District of Arizona
>
> *s/Abbie Broughton*
> ABBIE S. BROUGHTON
> Assistant U.S. Attorneys

## Certificate of Service

I hereby certify that on March 19, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark Rumold
Attorney for Defendant

*s/Alexandria Gaulin*
U.S. Attorney's Office