TIMOTHY COURCHAINE
United States Attorney
District of Arizona

DAVID A. PIMSNER
Arizona State Bar No. 007480
ABBIE S. BROUGHTON
California State Bar No. 226680
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: david.pimsner@usdoj.gov
Email: Abbie.Broughton@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-08132-PCT-JJT |
|---|---|
| Plaintiff, | |
| vs. | **GOVERNMENT'S MOTION IN LIMINE RE: DNA TESTIMONY AND NOTICE OF INTENT TO RELY ON FED. R. EVID. 703** |
| Donald Day Jr., | |
| Defendant. | |

The United States of America hereby gives notice of its intent to rely on Federal Rule of Evidence 703 related to expert witnesses, as necessary to develop the testimony of its expert witnesses. The government further seeks a pre-trial ruling regarding this issue. The below pleading is primarily directed at the introduction of DNA evidence in this case, but also provides legal support for the admission of any expert witness testimony and the underlying data upon which such testimony is based.

The government will be presenting DNA evidence in this case regarding numerous pieces of evidence which contain Defendant's DNA, all as detailed in its "Notice of Intent to Use Expert Testimony Re: DNA." (Doc. 126). The United States intends to call the Border Patrol Agent who swabbed the items for DNA collection and Forensic Examiner Marcy Plaza, who performed the analysis and rendered expert opinions and conclusions.

The United States does not intend to call biologists from the FBI's DNA Casework Unit ("DCU"), Katherine Mayer, Margaret Curran, Patricia Kramer, Melissa Ramirez, Emma Stockham, Eugenia Pontacq, Lily Wong, and Emily Carver who were supervised by Ms. Plaza and who processed the evidence in accordance with her instructions. Ms. Plaza is the witness who formed conclusions regarding the DNA in this case, signed the reports containing her conclusions, and will be available for cross-examination.

The government moves the Court to find that Ms. Plaza's testimony will satisfy the foundational requirements for the introduction of her expert opinions, which will be in part based on the steps undertaken by other biologists. This request is supported by Fed. R. Evid. 703, and will not deny defendant his rights pursuant to the Sixth Amendment's Confrontation Clause.

**I.     Background Regarding DNA Analysis**

In the DCU, Forensic Examiners and biologists each play a role in the DNA analysis of evidence. When evidence is received, Forensic Examiners determine which items will be tested, which examinations will be performed, and the appropriate workflow for such examinations. A team of biologists processes the evidence in accordance with the directions of the Forensic Examiner and the Standard Operating Protocols of such tests. Biologists keep detailed notes and work closely with the Forensic Examiner as items are processed. When testing is completed, the Forensic Examiner is responsible for data analysis, interpretation, and authoring a report detailing her conclusions.

The various steps involved in this process have been detailed in Ms. Plaza's expert witness notice. (Doc. 126). In summary, Ms. Plaza supervises her team of biologists regarding the steps to be employed and the results observed. Much of this process involves biologists transferring samples to robots to perform the various steps.

As it pertains to this case, the steps employed by Ms. Plaza and her team have all been detailed in previously provided discovery. Once the preliminary steps of DNA analysis were completed, Ms. Plaza imported the raw data produced to a software program that assists with visualizing the DNA profiles and performing her analysis. She reviewed the

laboratory notes and data created by each of the biologists and confirmed that all procedures had been completed appropriately, in accordance with her directions and the Standard Operating Procedures. Additionally, Ms. Plaza analyzed all resulting data and confirmed that controls run alongside the evidence produced the expected results.

**II.     Argument**

While preparing for trial, the government sought stipulations regarding DNA from the defense in order to streamline this case. To date, no stipulations have been reached, including the request outlined here.

The government anticipates that DNA testimony will proceed in this fashion: Ms. Plaza will be asked to explain the various steps involved in the DNA process; whether she instructed and supervised a team of biologists to assist in these steps; and whether the steps and analysis yielded results for her ultimate analysis and conclusions. Ms. Plaza will testify that all of this information was captured in data, previously disclosed, and that she based her opinions on such facts and data of which she has been made aware and/or personally observed. She will also testify that experts in her field reasonably rely on those kinds of facts or data informing an opinion on the subject.

Rule 703 states: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." In the case at bar, the testimony of biologists supervised by Ms. Plaza falls squarely within this rule.

Further, Ms. Plaza's testimony will not in any way violate defendant's rights under the Sixth Amendment's Confrontation Clause. "The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42

(2004). The Sixth Amendment "guarantees a defendant the right to cross-examine the witnesses against him or her, and it is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010) (citation omitted). Statements are "testimonial" when their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v. Clark*, 576 U.S. 237, 244 (2015) (quoting *Davis v. Washington*, 547 U.S. 813, 822).

"[W]hen a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the [statement]' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the [statement] occurs." *Michigan v. Bryant*, 562 U.S. 344, 370 (2011).

The out-of-court statements of expert witnesses are subject to the Confrontation Clause. For example, an affidavit of a state laboratory analyst, swearing that the analyst chemically tested a particular substance and found it to contain a prohibited narcotic, constitutes a testimonial statement such that the affidavit could not be admitted into evidence absent an opportunity for the criminal defendant to cross-examine the analyst. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). Such affidavits constitute testimonial statements because they "are incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" and because "the affidavits [were] 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'" *Id*. (quoting *Crawford*, 541 U.S. at 51-52). The Supreme Court subsequently held that a signed statement attesting to an analysis of the blood alcohol content of a defendant's blood sample likewise qualifies as a testimonial statement to which the Confrontation Clause applies. *See Bullcoming v. New Mexico*, 564 U.S. 647, 663-65 (2011).

This case does not implicate the Confrontation concerns raised in *Melendez-Diaz* or *Bullcoming* because the government will call the witness who formed the conclusions in this

case and signed the reports at issue: Ms. Plaza. The United States Supreme Court and the Circuit Courts of Appeal have been careful "not [to] hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez- Diaz*, 557 U.S. at 311 n.1. In other words, "this does not mean that everyone who laid hands on the evidence must be called." *Id*. In cases involving DNA examinations specifically, the Supreme Court has noted that "[i]f DNA profiles could not be introduced without calling the technicians who participated in the preparation of the profile, economic pressures would encourage prosecutors to forgo DNA testing and rely instead on older forms of evidence, such as eyewitness identification, that are less reliable." *Williams v. Illinois*, 567 U.S. 50, 58 (2012).

Many Federal Circuit Courts have now ruled that the Confrontation Clause does not require personnel who simply process evidence, such as the biologists in this case, to testify. One such case, *United States v. Murray,* 540 Fed. App'x 918 (11th Cir. 2013), is directly on point. There, the defense challenged the testimony of an FBI DNA examiner from the same FBI DNA Casework Unit as Ms. Plaza. The defense argued the forensic examiner's testimony violated the Confrontation Clause, as her testimony relied on test results produced by biologists under her supervision. The Eleventh Circuit held that this was not a Confrontation Clause violation. *Id.* at 921.  *See also United States v. Kaszuba*, 823 Fed. App'x 77 (3d Cir. 2020) (admission of report through lab director rather than technician who performed the testing did not violate the Confrontation Clause).

The United States District Court for the District of Columbia ruled likewise. In *United States v. Perkins*, 83 F. Supp. 3d 326 (D.D.C. 2015), the Petitioner claimed an FBI DNA analyst's testimony (again from the same FBI DNA Casework Unit as Ms. Plaza) violated the Confrontation Clause because it was premised on the work of the team of biologists who handled the evidence. Citing *Williams*, the court rejected the argument. *Id.*

A District Court in the Eastern District of New York recently explained why the Confrontation Clause does not require each lab analyst who may have participated in testing

to testify at trial:

> [N]ot everyone "whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez-Diaz*, 557 U.S. at 311 n.1. This is especially true with regard to DNA evidence. In a recent federal habeas decision, the Second Circuit characterized clearly established Supreme Court precedent as follows: "[T]he Supreme Court has never held that the Confrontation Clause requires an opportunity to cross examine each lab analyst involved in the process of generating a DNA profile and comparing it with another, nor has it held that uncertified, unsworn notations of the sort at issue here are testimonial." *Washington v. Griffin*, 876 F.3d 395, 407 (2d Cir. 2017). A plurality of the Supreme Court has noted that "in many labs, numerous technicians work on each DNA profile. When the work of a lab is divided up in such a way, it is likely that the sole purpose of each technician is simply to perform his or her task in accordance with accepted procedures." *Williams v. Illinois*, 567 U.S. 50, 85 (2012) (plurality opinion) (citations omitted). Given this primary purpose, these analysts' notes and written materials concerning their preliminary role in the DNA analysis would not constitute testimonial statements to which the Confrontation Clause applied. *See Clark*, 576 U.S. at 244 (applying the primary purpose test); *Bryant*, 562 U.S. at 370 (same).

*Sanders v. Fischer*, 2021 WL 3373127, at *7 (E.D.N.Y. Aug. 3, 2021).

A District Court in the Western District of Washington also recently held that "the Confrontation Clause does not require the Government to produce the three Biologists as witnesses because the Biologists did not make any "testimonial" statements, express or implied, that are subject to the Confrontation Clause. *United States v. Robinson*, No. 2:22-CR-00212-TL, 2023 WL 6066691, at *4 (W.D. Wash. Sept. 18, 2023)

The Confrontation Clause entitles the defendant to cross-examine Ms. Plaza, the DNA analyst who formed DNA conclusions in this case. Ms. Plaza performed the final-level DNA analysis, reviewed the results of the preliminary evidence processing conducted by colleagues, produced the relevant DNA profiles, and expressed her expert opinions regarding the significance of the DNA in this case. Ms. Plaza's actions amounted to the performance of a DNA test, and the defendant's Confrontation Clause rights will be satisfied as he will have an opportunity to cross-examine Ms. Plaza at trial. *See Fischer*, 2021 WL 3373127, at *8; *see also Pitre v. Griffin*, 2016 WL 7442653, at *9 (E.D.N.Y. Dec. 26, 2016) ("Here, petitioner had the opportunity to cross-examine the only expert that expressed an opinion to the jury tying the victim's DNA to petitioner's clothing…. At this point in the development of the law on the right to confrontation over DNA testing, no Supreme Court precedent requires more."); *Rush v. Wright,* 2018 WL 4375150, at *8 (N.D. Ala. 2018) (analyst explained that "she reviewed a summary of all quality control measures within each analysis, as well as the actual data from the specific samples. She then composed the report from which she testified. Her testimony comports with the requirements of the Sixth Amendment.").

It is the conclusions in Ms. Plaza's reports that are accusatory, because they link Defendant's DNA to the firearms and ammunition. Unlike *Melendez-Diaz*, where no witness testified about the certificates, here the government will be calling a witness who will testify in detail about her work related to the DNA testing, and the defendant will have the opportunity to cross-examine that witness.

Furthermore, the testimony of the DCU biologists who processed the DNA for Ms. Plaza's analysis would not add any particular value to Ms. Plaza's testimony. All steps taken by the biologists were pre-determined by Ms. Plaza and the DCU Standard Operating Procedures. The biologists did not make decisions or form conclusions. Ms. Plaza reviewed their work and confirmed the integrity of the processing done by the biologists, and there is no indication in the case file that there was anything remarkable or irregular about the processing of the evidence in this case. There were no discrepancies in the chain of custody,

nor were any tasks performed by the additional DCU biologists outside of the Standard Operating Procedures of the DCU. Calling additional DCU biologists to say just this at trial is a waste of resources and legally unnecessary, as their testimony is not required by the Sixth Amendment.

### III. Conclusion

For these reasons, the government respectfully moves the Court to find in advance of trial that the government does not need to call the FBI DCU biologists at trial to satisfy the defendant's general Sixth Amendment rights.

Respectfully submitted this 25th day of March, 2025.

> TIMOTHY COURCHAINE
> United States Attorney
> District of Arizona
>
> *s/Abbie Broughton*
> ABBIE S. BROUGHTON
> DAVID A. PIMSNER
> Assistant U.S. Attorneys

### Certificate of Service

I hereby certify that on March 25, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark Rumold
Jami Johnson
Attorney for Defendant

*s/Alexandria Gaulin*
U.S. Attorney's Office