TIMOTHY COURCHAINE
United States Attorney
District of Arizona
DAVID A. PIMSNER
Arizona State Bar No. 007480
ABBIE BROUGHTON
California State Bar No. 226680
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: David.Pimsner@usdoj.gov
Email: Abbie.Broughton@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR-23-08132-PCT-JJT |
| Plaintiff, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION *IN LIMINE*** |
| Donald Day Jr., | |
| Defendant. | |

The United States, by and through undersigned counsel, opposes the defendant's Motion *In Limine* for the reasons stated herein and requests the court to deny the same.

**The Government Opposes the Sanitizing of Pejoratives or Offensive Terms**

The defendant first requests to sanitize statements or videos made by the defendant because they contain pejoratives or offensive terms. The defendant also objects to evidence of any statements concerning unrelated topics to the crimes charged in the indictment.  The government only intends to submit evidence that demonstrates defendant's knowledge, intent and his admission of conduct that relates to the three threat counts, the possession of firearms, and his knowledge of his status as a convicted felon.

The evidence the government intends to introduce relate to the following:

1       1)  Specific threats made to the FBI agents who were with the defendant soon after

2           his arrest;

3       2)  statements regarding defendant's ties to the property in Heber and vehicle where

4           firearms and ammunition were found;

5       3)  statements concerning the use of the handle "Geronimo's bones" on YouTube

6           and his making and posting videos including his frequent communication with

7           the Trains in Australia through videos and comments;

8       4)  statements concerning defendant's views towards law enforcement and his use

9           of the term devils, demons and evil and how he would confront evil;

10       5)  statements that he wished he was with the Trains to kill the police;

11       6)  statement regarding his use of BitChute using the handle 'wearealldeadasfuck"

12           and specific posts he made and agreed with regarding the threat to the Director

13           of the World Health Organization;

14       7)  statements concerning his knowledge of the firearms present at the property that

15           he claimed were for home defense;

16       8)  statements regarding him teaching his girlfriend how to shoot and maintain

17           firearms;

18       9)  statements that he purchased ammunition;

19       10) statements concerning how he would confront law enforcement if they came to

20           his property; and

21       11) statements concerning his status and ability to possess firearms.

22          In addition to defendant's post-arrest statements as outlined above, the government

23 intends to use online posts made by the defendant wherein he admits to possessing firearms

24 and ammunition and his status as an ex-convict. He also posted how he would react if the

25 "federales" attempted to disarm him.  The defendant also admitted during a jail call with

26 his girlfriend that he sawed off the shotgun which is the subject of the NFA weapon's

27 charge.  Also, in a letter written by the defendant while he is incarcerated, he called the

28

1  room where the majority of the guns and ammunition were recovered the "gun room."  All

2  of the statements referenced go to context, defendant's knowledge, intent and are relevant

3  to prove the elements of the crimes charged.

4         The government has no intention of presenting statements that go toward unrelated

5  topics such as his claim that he killed his stepfather,[1] how he exposed child molesters, how

6  he burned out methamphetamine cooks or how Hillary Clinton wouldn't leave the room

7  alive if she were present.

8         The defendant offers no authority to support sanitizing defendant's statements to

9  remove pejoratives and offensive terms.  As it relates to the threat counts, the government

10  has the burden to establish that the defendant made a true threat that was not jests,

11  hyperbole, or other statements that when taken in context do not convey a real possibility

12  that violence will follow.  To sanitize defendant's statement would hinder the jury's ability

13  to evaluate the statements as they were made.  Accordingly, the government opposes

14  defendant's request.

15  **The Government will Not Submit Post-Arrest Statements that Defendant was**

16  **Responsible for the Australian Conduct**

17         The government does not intend to introduce evidence regarding the charges listed

18  in the search warrant or any post-arrest statements relating to the defendant taking

19  responsibility for the crimes committed in Australia.  At trial, the government intends to

20  offer evidence showing, among other things:

21         1) the relationship between the defendant and the Trains;

22         2) the similarities between the Trains' property and the defendant's property;

23         3) a limited explanation of the events that took place in Wieambilla, Queensland,

24            Australia on December 12, 2022, as it related to the defendant's threat;

25

26

27  [1] The California conviction records do not support defendant's claim that he killed
   his stepfather.

28

3

1    4) evidence of communication between the defendant and the Trains, including

2         language explanatory of the terms used in Count One.

3  This will include some statements made by the defendant in his post-arrest statements and

4  in his online postings as outlined in the previous section.

5         The government has proposed a limiting instruction and the Court has agreed to

6  issue limiting instructions (Doc. 153) to ensure that the jury is advised that to safeguard

7  against unfair prejudice by instructing the jury that the Australian evidence is not being

8  offered because the defendant bore any responsibility for the conduct but was offered for

9  the defendant's motive and intent as it relates to the threat in Count 1.

10        Therefore, the defendant's objection to the admission of evidence relating to the

11  defendantg'se responsibility for the Australian murders to the defendant is moot.

12  **The Government Opposes the Use of Photograph Exhibits Only**

13        The defendant asks the Court to limit the government's evidence at trial to only

14  photographs[2] of the firearms and ammunition seized because the defendant intends to plead

15  guilty or otherwise contest his guilt to the 18 U.S.C. § 922(g) offense.  But as the facts exist

16  at this point, the defendant has not appeared in court to enter such a plea and there is no

17  clear stipulation in the record that defendant will not contest possession of the weapons

18  seized from his property.

19        The defendant also suggests that photographs offer a "less provocative" alternative.

20  In support of this proposition, the defendant cites to *Old Chief v. United States*, 519 U.S.

21  172 (1997). However, *Old Chief* does not support the defendant's position.  In *Old Chief*,

22  the defendant agreed to stipulate that he was previously convicted of an offense punishable

23  by imprisonment exceeding one year in lieu of the government entering his prior conviction

24  records which revealed the nature of the underlying conviction arguing unfair prejudice.

25

26

27

[2] With the exception of the Remington 870 sawed-off shotgun.

28

1    The government refused to accept the stipulation and entered the conviction records in their

2    case-in-chief. *Id.* at 175-177.  The Supreme Court reversed the conviction finding that the

3    risk of unfair prejudice substantially outweighed probative value of the record of

4    conviction when there is a stipulation to the felony-convict status. *Id* at 191-192.

5         When analyzing their decision, the Supreme Court considered the proposition

6    whether the stipulation of prior conviction supplied equivalent value to the admission of

7    conviction records.  *Id.* at 186. They considered the "standard rule that prosecution is

8    entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal

9    defendant may not stipulate or admit his way out of the full evidentiary force of the case

10   the Government chooses to present it" citing *Parr v. United States*, 255 F.2d 86 (Fifth

11   Circuit) (1958),  *Id.* at 186-187.   The Court recognized "[t]he 'fair and legitimate weight'

12   of conventional evidence showing individual thoughts and acts amounting to crime reflects

13   the fact that making case with testimony and tangible things not only satisfies the formal

14   definition of an offense, but tells a colorful story with descriptive richness." *Id.* at 187.  The

15   Court also noted 'the prosecution is entitled to prove its case free from any defendant's

16   option to stipulate the evidence away."  *Id.* at 189.  Here the defendant is not offering to

17   stipulate any facts away.  He is attempting to limit the best evidenced the government has

18   to show the defendant knowingly possessed firearms and ammunition.

19        It is the government that has the burden to show the defendant knew of the presence

20   of the firearms and ammunition and had physical control of it or knew of its presence and

21   had the power and intention to control it. *See Ninth Circuit Model Criminal Jury

22   Instructions*, § 6.15 (Revised December 2017).  The sheer volume of the firearms and

23   ammunition and the fact that the firearms and ammunition were in the open supports the

24   conclusion the defendant knew of its presence.  The existence of this evidence is an

25   essential element of the offense and its probative value is not outweighed by unfair

26   prejudice by introducing the actual firearms and ammunition into evidence.

27

28
                                          5

1    **Defendant's Recording to His Girlfriend is Hearsay and Not Relevant**

2            The United States opposes defense introducing the recording defendant made for

3    his girlfriend because it is not reliable, not relevant and is self-serving hearsay. It is a well-

4    established legal principle and should go without saying that a defendant's statement can

5    only be introduced by the United States – and not by the defendant – as an admission by a

6    party-opponent. Fed. R. Evid. 801(d)(2). U*nited States v. Ortega*, 203 F.3d 675, 682 (9th

7    Cir. 2000) ("A defendant's self-inculpatory statements, when offered by the government,

8    are admissions by a party-opponent and are therefore not hearsay.")

9            Here, the defendant made a lengthy statement to law enforcement, including both a

10   recording to his girlfriend and two calls with his girlfriend while agents were at his property

11   serving a search warrant. He seeks to introduce the shorter recorded statement where he is

12   calm and asks her to cooperate with law enforcement.  After the recorded statement,

13   defendant becomes emotional and angry and threatens the agents, then later again has two

14   separate phone calls with his girlfriend where he tells her there is a warrant and she should

15   disarm, tells her to make sure they know all the firearms belong to her, and that he is a

16   criminal and he will likely die in custody.

17           As detailed above, the United States plans to introduce some of the defendant's

18   statements, relevant to his threats and possession of firearms during its case-in-chief. While

19   his statements to law enforcement are admissible if introduced by the government,

20   defendant is precluded from eliciting or introducing his own statements through any

21   witness, whether on direct or cross-examination, as such statements constitute inadmissible

22   hearsay. Fed. R. Evid. 801(c). *Ortega* at 882 (when offered by a defendant, "non-self-

23   inculpatory statements are inadmissible hearsay."; *United States v. Nakai*, 413 F.3d 1019,

24   1022 (9th Cir. 2005) (holding that the defendant's attempt to elicit his own statements from

25   a witness was "inadmissible hearsay"); *Williamson v. United States*, 512 U.S. 594, 599

26   (1994).

27           The Ninth Circuit's holding in *United States v. Fernandez*, 839 F.2d 639, 640 (9th

28
                                                    6

1    Cir. 1988), is illustrative of this rule. There, Fernandez denied his guilt to law enforcement

2    in a post-arrest interview. At trial, the defense sought to elicit his statement from a law

3    enforcement witness. *Id*. The trial court sustained the government's hearsay objection, and

4    the Ninth Circuit affirmed the trial court's ruling, holding, "It seems obvious defense

5    counsel wished to place [the defendant]'s statement to [law enforcement] before the jury

6    without subjecting [the defendant] to cross-examination, precisely what the hearsay rule

7    forbids." *Id*. (citing Fed. R. Evid. 801(c); *United States v. Willis*, 759 F.2d 1486, 1501 (11th

8    Cir. 1985)). The Fernandez court further explained that if the defendant wanted to deny his

9    guilt, "he could have testified to the statement himself." *Id*. Because he chose not to testify,

10   however, his statement was hearsay and was not admissible at trial. *Id*. The same applies

11   here.

12         Here, defendant has not offered any viable non-hearsay reasons to introduce any of

13   his conversations with his girlfriend-the recording, the first call, or the second call.  All

14   contain self-serving statements that will be offered for the truth, despite defendant's

15   argument to the contrary.  The fact that defendant complied with authorities can be shown

16   through examination of the agents with whom he cooperated rather than offering otherwise

17   inadmissible hearsay including statements in the first call directing his girlfriend that none

18   of the weapons belong to him and statements in the second call telling her that he will die

19   in custody.

20         Federal Rule of Evidence 106, also known as the "rule of completeness" does not

21   change this conclusion. Rule 106 states, "if a party introduces all or part of a writing or

22   recorded statement, an adverse party may require the introduction, at that time, of any other

23   part — or any other writing or recorded statement — that in fairness ought to be considered

24   at the same time." Fed. R. Evid. 106. Yet, Rule 106 exists "to avert 'misunderstanding or

25   distortion' caused by introduction of only part of a document." *United States v. Vallejos*,

26   742 F.3d 902, 905 (9th Cir. 2014) (*quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153,

27   172 (1988)). Critically, rule 106 does not "require the introduction of any unedited writing

28

7

or statement merely because an adverse party has introduced an edited version." *Id*. Indeed, "adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." Id. (*quoting United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996)). "[I]f the 'complete statement [does] not serve to correct a misleading impression' in the edited statement that is created by taking something out of context, the Rule of Completeness will not be applied to admit the full statement." *Id*. (quoting *Collicott*, 92 F.3d at 983, and *citing United States v. Dorrell*, 758 F.2d 427, 434–35 (9th Cir.1985)) (alteration original).

The defendant should be prohibited from eliciting or introducing his own statements at trial, despite the offered "non-hearsay" reasons as his statements are "inadmissible hearsay," *Ortega*, 203 F.3d at 682, and are "precisely what the hearsay rule forbids," *Fernandez*, 839 F.2d at 640.

Respectfully submitted this 31st day of March, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*/s/ Abbie Broughton*
DAVID A. PIMSNER
ABBIE BROUGHTON
Assistant U.S. Attorneys

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark Rumold

Jami Johnson

*/s/ Abbie Broughton*
U.S. Attorney's Office