TIMOTHY COURCHAINE
United States Attorney
District of Arizona

ABBIE BROUGHTON
California State Bar No. 226680
GLENN B. McCORMICK
Arizona Bar No. 013328
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Abbie.Broughton.Marsh@usdoj.gov
Email: Glenn.McCormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>vs.<br><br>Donald Day Jr.,<br><br>   Defendant. | No. CR-23-08132-PCT-JJT<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS COUNT 4** |

Defendant's Supplemental Motion to Dismiss Count Four should be denied. The National Firearms Act (NFA) is a is a proper exercise of congressional taxation authority. Even if the One Big Beautiful Bill Act (OBBBA) rendered the NFA not a taxing scheme, it certainly was when the defendant possessed the short-barreled shotgun, and the defendant's other claims are not new and have previously been addressed in favor of upholding the NFA as a proper exercise of congressional taxation authority and related regulation.

I. <u>Relevant Procedural History</u>

On March 4, 2024, Defendant filed a Motion to Dismiss Counts Three and Four of the Amended First Superseding Indictment, Doc. 37, challenging the constitutionality of firearms charges in those counts, based upon *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,

14 S.Ct. 2111 (2022). Doc. 41. The United States filed a response in opposition on March 18, 2024, Doc. 50, and Defendant filed a reply on March 25, 2024, Doc. 55. Defendant filed a Notice of Supplemental Authority, Doc. 73, following the May 29, 2024, Ninth Circuit panel decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), in which the court held 18 U.S.C. § 922(g)(1)'s prohibition of firearm possession by felons was unconstitutional as applied to Duarte, a defendant with prior felony convictions for vandalism, possession of a firearm by a felon, possession of a controlled substance for sale, and evading a police officer. The *Duarte* panel decision was vacated on July 17, 2024, and *en banc* review was granted. The *Duarte* panel decision was reversed when the *en banc* court held "[Title 18 U.S.C.] § 922(g)(1) is not unconstitutional as applied to non-violent felons like [] Duarte." *United States v. Duarte*, 17 F.4th 743, 748 (9th Cir. 2025). The *en banc Durate* decision has been discussed on the record in prior hearings but has not been noticed to the court in a pleading on the docket. To the extent that is necessary, the United States does so through this pleading. The court has not ruled on Defendant's Motion to Dismiss Counts 3 and 4, Doc. 41, and defendant has now filed a Supplemental Motion to Dismiss Count Four.[1] Doc. 195.

II.    Factual Background

On December 1, 2023, Defendant was arrested, and a search warrant was served at his residence near Heber, Arizona. During the execution of the search warrant, nine firearms and thousands of rounds of various caliber ammunition were seized from a room in the residence. A Remington Super Mag 870 shotgun with the barrel shortened to under 18 inches in length was among the firearms found in the same room on a gun rack mounted on the wall. Defendant's DNA, with strong support for inclusion, was found on the Remington shotgun. In a jail call to his former girlfriend, Defendant admitted sawing off

---

[1] In Doc. 195, Defendant also reasserts arguments presented in Doc. 23, a Motion to Dismiss the original two count indictment on grounds that the threats crimes alleged therein failed to identify a "natural person" or allege a "true threat." That motion was denied by this court on May 29, 2024. Doc. 80. Those arguments do not appear to relate to the challenge presented herein and are not addressed.

- 1 -

the shotgun barrel.

Defendant made statements online regarding his possession of firearms to include the following:

- May 5, 2022, in a YouTube comment Defendant wrote, "when I pray for endurance and victory over evil, I do so with a shotgun cradled in my arms."
- July 16, 2022, in a YouTube comment Defendant wrote, "my wife has a lunch packed for me, my gear is within arms reach of me, my rifle is oiled, and I am ready to head out of the door in less than 5 minutes 24/7/365."
- July 25, 2022, in a YouTube comment Day wrote, "these days, I just watch the stupid through the keyhole, 'til it's time to center my rifle barrel through it."
- November 9, 2022, in a YouTube comment Defendant wrote, "In order to maintain my ammo cache, I work outside the system."

III.     Defendant Claims the NFA[2] violates the Second Amendment

Defendant contends that the National Firearms Act's (NFA) regulation of short-barreled shotguns, Title 26 U.S.C. §§ 5861 and 5845(a), is a constitutional overreach in violation of the Second Amendment to the United States Constitution. In the Government's Response to Defendant's Second Motion to Dismiss Superseding Indictment, Doc. 50 at 34-37, the United States addressed Defendant's initial challenge to Title 26 U.S.C. § 5861, citing the well settled law regarding the constitutionality of the NFA relative to short-barreled shotguns. In the Supplemental Motion, Defendant claims that by zeroing-out the transfer tax formerly required under the NFA, the recently passed "One Big Beautiful Bill Act" dissolves the constitutional foundation upon which the NFA regulates short-barreled shotguns, making the NFA unconstitutional and moves to dismiss count four. This response addresses only the claims in the supplemental pleading, Doc. 195.

IV.     Law and Argument

---

[2] National Firearms Act (NFA), Title 26 U.S.C. §§ 5801 *et seq*.

A. The NFA is a Proper Exercise of Congressional Authority as a Taxation Scheme.

The NFA is a comprehensive taxation scheme applicable to the manufacture, sale, and transfer of certain weapons, including short-barreled shotguns. Among other provisions, it imposes a registration requirement and yearly special (occupational) tax on every importer, manufacturer, and dealer of NFA firearms. 26 U.S.C. §§ 5801, 5802. The tax rate is $1,000 yearly for importers and manufacturers and $500 yearly for dealers, with some reduced rates. 26 U.S.C. § 5801. The statute also imposes registration requirements and excise taxes for the "making" (by a non-manufacturer) and "transfer" of covered firearms. 26 U.S.C. § 5811, 5812, 5821, 5822, 5841. The "making" and "transfer" tax rate is $200 for each firearm, except that the "transfer" of certain firearms classified as "any other weapons" is subject to a reduced rate of $5. 26 U.S.C. § 5811, 5821. Violation of the NFA carries criminal penalties, including for possessing an unregistered firearm. 26 U.S.C. § 5861.

Under the recent OBBBA—which was enacted on July 4, 2025, and will take effect on January 1, 2026—the NFA "making" and "transfer" tax rate is reduced to $0, except for machineguns and destructive devices. PL 119-21, July 4, 2025, 139 Stat 72. The OBBBA will not impact the special occupational tax or any other provisions of the NFA.

The constitutionality of the NFA under Congress' taxing power is long-established. *Sonzinsky v. United States*, 300 U.S. 506, 514 (1937); *United States v. Mack*, 164 F.3d 467, 473 (9th Cir. 1999) ("We have already determined that the passage of § 5861(d) was a permissible exercise of Congress's taxing power."); *United States v. Giannini*, 455 F.2d 147, 148 (9th Cir. 1972) (per curium) (Section 5861 "is a part of a comprehensive scheme to levy and collect taxes upon activities and transactions involving various kinds of firearms. Section 5861(h) is rationally designed to aid in the collection of taxes imposed by other provisions of the National Firearms Act.").

B. The OBBBA is Inapplicable to Defendant's Case.

This Court should reject Defendant's claim that Count 4 should be dismissed because "recent legislative changes" in the OBBBA have rendered the NFA

unconstitutional as to short-barreled shotguns. The OBBBA was enacted on July 4, 2025, and is not yet effective. The legislative changes are inapplicable to Defendant's NFA charge, which arises from his possession of an unregistered firearm in violation of the statutory scheme as it existed on December 1, 2023. *United States v. Rodrigues*, 229 F.3d 842, 844 (9th Cir. 2000) (applying the law "as it existed at the time of the offense conduct").

Even assuming arguendo that the OBBBA somehow applied to Defendant's case (and it does not), the future reduction of the "making" and "transfer" taxes to $0 does not undermine the constitutional basis for Count 4 because firearm registration furthers the NFA taxation scheme.

Following the enactment of the 18 U.S.C. § 922(o) ban on possession of post-1986 machine guns, there was substantial litigation concerning whether the NFA was still a valid exercise of Congress' taxing authority for those weapons because the government was no longer registering and taxing them. The Ninth Circuit upheld the constitutionality of a 26 U.S.C. § 5861(d) charge for possession of an unregistered machine gun, reasoning that "requiring those who possess machine guns to register them is in aid of the taxing power even if the government no longer taxes possession. The manufacture of machine guns continues to be taxed, and knowing the chain of possession of a firearm would help the government determine who made it; thus, requiring registration for possession still facilitates taxation." *Hunter v. United States*, 73 F.3d 260, 262 (9th Cir. 1996); see also *United States v. Jones*, 976 F.2d 176, 184 (4th Cir. 1992) (affirming constitutionality of NFA in part because, despite lack of tax payments for machine guns, "clearly, knowing the chain of possession and transfer assists in determining who made the firearm and hence is 'supportable as in aid of a revenue purpose'").

Although *Hunter* did not involve legislative action to directly reduce NFA taxes, its rationale applies here. Some NFA firearms will be subject to a $0 excise tax rate under the OBBBA, but registration of those firearms is "in aid of the taxing power" because manufacturers, importers, and dealers of NFA firearms continue to be taxed as part of the larger regulatory framework. 26 U.S.C. § 5801. As in *Hunter*, requiring registration to

possess an NFA firearm "still facilitates taxation" because it will assist in collection of the special occupational tax.  73 F.3d at 262.

### C.  Defendant's Other Claims Fail Under Controlling Authority.

While Defendant frames his supplemental motion around the new OBBBA, his related claims are arguments that have been long rejected by the courts.

Defendant claims the NFA tax "served as a pretext for criminalizing the receipt and possession of a short-barreled shotgun, which is properly a matter for the States rather than the federal government."   (Suppl. Mot. at 3-4.)  But "taxes that seek to influence conduct are nothing new" and the Supreme Court has reaffirmed the constitutionality of "obviously regulatory measures as taxes on selling . . . sawed-off shotguns."  *NFIB v. Sebelius*, 567 U.S. 519, 567 (2012) (citing *Sonzinsky*, 300 U.S. at 516).  The NFA is a constitutional as a tax scheme even though it is accompanied by substantial criminal penalties.  *United States v. Bolatete*, 977 F.3d 1022, 1033-34 (11th Cir. 2020) (affirming constitutionality of NFA in § 5861(d) prosecution and rejecting appellant's arguments that the law is public safety law disguised as a tax because it is enforced by the Department of Justice, carries a maximum penalty of 10 years' prison, and the transfer fee is only $200).

Defendant argues that the NFA is not a true tax because tax rates have not been raised since the statute was enacted, but he points to no threshold amount of revenue a payment must generate to be considered a tax.   The "essential feature of any tax" is that it "produces at least some revenue for the Government."  *NFIB*, 567 U.S. at 564.  The NFA easily satisfies this requirement.  *Sonzinsky*, 300 U.S. at 514 (finding that NFA's tax was "productive of some revenue" where the tax was paid by 27 dealers in 1934 and 22 dealers in 1935).

Defendant further asserts the NFA is not really a tax because it is enforced by the Department of Justice and ATF rather than the Department of Treasury.  But since ATF was moved from Treasury to Justice in 2003, the Supreme Court has reaffirmed the NFA is constitutional.  *NFIB*, 567 U.S. at 567; see also *United States v. Cox*, 906 F.3d 1170, 1180 (10th Cir. 2018) (rejecting argument that NFA payments are no longer a tax because

- 5 -

the ATF administers the NFA from the Justice Department rather than the Treasury Department).

V.    Conclusion

The OBBBA changes to the structure of the NFA taxation scheme do not and will not void it as a taxation scheme. The registration aspects of the scheme most obviously apply to the defendant. Registration requirements aid in the administration of the taxation scheme. Further, in this case the defendant took a non NFA shotgun and made it an NFA short-barreled shotgun. He is technically its manufacturer, despite not being licensed to manufacture firearms. Manufacturers are and will be subject to an annual tax under the NFA. The defendant should have been taxed as a manufacturer and should have registered the short-barreled shotgun when he created it.  Therefore, his acts bring him squarely within the regulatory and taxation authority of the NFA.

The defendant possessed the short-barreled shotgun on and before December 1, 2023. OBBBA was enacted on July 4, 2025, but relevant provisions do not become effective until 2026.  Even assuming the OBBBA has the effect claimed by the defendant, it did not have that effect on December 1, 2023, does not today, and will not for several more months.  The defendant is responsible for his acts on December 1, 2023, according to the law on that date.

The defendant's other challenges to the purpose, quantitative revenue impact, and manner of enforcement of the NFA have each been addressed by courts and found lacking. Accordingly, Defendant's Supplemental Motion to Dismiss Count Four should be denied.

Respectfully Submitted this 25th day of August, 2025.

    TIMOTHY COURCHAINE
    United States Attorney
    District of Arizona

    *s/Glenn B. McCormick*
    ABBIE BOUGHTON
    GLENN MCCORMICK
    Assistant U.S. Attorneys


## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing sealed documents and electronically transmitted a copy to the following CM/ECF registrants:

Mark Rumold
Jami Johnson
*Counsel for Donald Day Jr.*

 *s/Glenn B. McCormick*
U.S. Attorney's Office