JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

MARK RUMOLD
California Bar #279060
JAMI JOHNSON
New York Bar #04823373
Asst. Federal Public Defenders
Attorneys for Defendant
mark_rumold@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>       vs.<br><br>Donald Day, Jr.,<br><br>             Defendant. | No. CR-23-08132-PCT-JTT<br><br>**Objection to Presentence Report**<br><br>**(Filed Under Seal, in Part)** |

Donald Day, through counsel, offers the following objections to the Draft
Presentence Report, filed on December 4, 2025 (Dkt # 279). For the reasons
explained below, Mr. Day respectfully requests the Court sustain the objections.

**I.     Objection 1: The 2-level enhancement under USSG §
2K2.1(b)(6)(B)(iii) does not apply to Mr. Day.**

The Draft Presentence Report incorrectly assigns Mr. Day a 2-level
enhancement under USSG § 2K2.1(b)(6)(iii). *See* Draft PSR, ¶ 38 (Dkt #279). The
enhancement applies to those engaging in, or connected to, straw purchasing or
firearms trafficking. It does not apply to the facts present here.

1
2

    a.   The Sentencing Commission intended §2K2.1(b)(6) to apply to those connected to straw purchasing or firearms trafficking, none of which occurred here.

3
4
5
6
7

According to the Sentencing Commission, Section 2K2.1(b)(6) responded to Congress's directive to enhance punishments for "defendants convicted under 18 U.S.C. § 932 [straw purchasing of firearms], 18 U.S.C. § 933 [trafficking in firearms], or other offenses involving straw purchasing or trafficking of firearms." *United States Sentencing Commission*, Amendment 819 ("Reason for Amendment").[1] Section 2K2.1(b)(6)(B), then, "provides a 2-level enhancement for

8
9
10
11
12
13

any defendant engaged in straw purchasing or trafficking." *Id*. The enhancement "incorporates the elements of the straw purchasing and firearms trafficking statutes . . . to provide an increase for defendants who attempted, conspired, or engaged in conduct involving the illicit transfer of a firearm or ammunition."

14
15
16
17
18

The Commission included the enhancement to "reflect Congress's view that [straw purchasers and firearm traffickers] are currently under-punished as compared to felons in possession of the trafficked weapons." *Id*. The enhancement, then "narrowly targets such defendants without also impacting other firearms defendants who were not intended to receive an increase." *Id*.

19
20
21
22
23
24

Mr. Day has not been charged with, much less convicted of, a violation of § 932, § 933, or another offense "involving the straw purchasing or trafficking of firearms." Instead, he was convicted of violating § 922(g)(1) based on his *access to* (and, at times, actual possession of) firearms lawfully purchased, owned, and possessed by his then-partner, Sabrina Spires. *See* Plea Agreement, ¶ 10(b).

25
26

As the Commission explained, those convicted of felon-in-possession, like Mr. Day, are already adequately punished, and applying the enhancement to Mr.

27
28

---

[1] *Available at* https://www.ussc.gov/guidelines/amendment/819.

Day would subvert the Commission's intended "narrow[] target[ing]" of the enhancement.

Nor were any of the firearms "straw purchased" by Ms. Spires for Mr. Day. Ms. Spires told FBI agents, in two separate interviews, that the firearms she purchased were hers. *See, e.g.*, Exhibit 1 - Excerpt of Transcript of Interview with Sabrina Spires on December 1, 2023 [pp 72-73]. Ms. Spires has a history with firearms, including experience hunting and shooting as a child. *See* Exhibit 2 - Excerpt of Transcript of Interview of Sabrina Spires on January 18, 2024 [pp 126 ln 1-25]. And, as Ms. Spires explained to the agents, "I always wanted to be able to protect myself," and the "introduction to guns was amazing psychologically[,] helping me feel like I'm able to protect myself." *Id.* [pp 128 ln 11; pp 129 ln 3-5].

Life on a ranch, too, required gun ownership: she owned "different guns for different needs and different purposes" because, on a ranch, it was "as essential as having a shovel or a pickaxe." Guns, according to Ms. Spires, were just "another farm tool." *Id.* [pp 177, ln 14-22]. Overall, Ms. Spires purchased the guns "so she could defend herself, their property, and the farm animals." Draft PSR ¶ 34.

This is not "straw purchasing." Ms. Spires purchased the firearms for herself, and she had her own rationale and motivation for owning the firearms. There is no evidence suggesting that ownership was ever transferred to Mr. Day. To the contrary: all evidence suggests that Ms. Spires retained ownership of each of the firearms she purchased. That Mr. Day ultimately *handled* Ms. Spires's firearms does not mean they were "straw purchased." Mr. Day was in a committed relationship with Ms. Spires; they lived on a rural ranch together, where firearms were just "another farm tool." It is no surprise, then, that these tools were, at times, used by both of them. Nor does the fact that Mr. Day helped Ms. Spires choose a

1   firearm change the analysis. Mr. Day provided his input on which firearm would

2   be best. But that does not mean that he induced her to purchase a firearm *for him*.

3           Overall, this is not the type of situation that § 2K2.1(b)(6)(B) was intended

4   to address. Applying it to the facts of his case would stretch it well-beyond its

5   intended purpose.

6                       b.  Section 2K2.1(b)(6)(iii) does not apply based on the plain language

7                           of the guideline.

8           Interpreting and applying the Guidelines begins with the text. *See, e.g.*,

9   *United States v. Castillo*, 69 F.4th 648, 657 (9th Cir. 2023) (applying "traditional

10  tools of statutory construction to the guideline"). And, if the text is unambiguous,

11  the inquiry ends there. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183

12  (2004).

13          In full, § 2K2.1(b)(6)(B) provides a two-level enhancement where the

14  defendant:

15          (i) transported, transferred, sold, or otherwise disposed of, or purchased
            or received with intent to transport, transfer, sell, or otherwise dispose
16          of, a firearm or any ammunition knowing or having reason to believe
            that such conduct would result in the receipt of the firearm or
17          ammunition by an individual who (I) was a prohibited person; or (II)
18          intended to use or dispose of the firearm or ammunition unlawfully; (ii)
            attempted or conspired to commit the conduct described in clause (i);
19          or (iii) received a firearm or any ammunition as a result of inducing the
20          conduct described in clause (i).
21
22  USSG § 2K2.1(b)(6)(B).
23
24          Neither Clause (i) nor Clause (ii), on its own, applies to Mr. Day. Only

25  Clause (iii) arguably could. Thus, and as applicable here, the enhancement

26  would apply if Mr. Day:

27           received a firearm or any ammunition as a result of inducing
            [another person to] transport[], transfer[], [sell], or otherwise
28          dispose[] of, or purchased or received with intent to transport,

4

transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who . . . was a prohibited person.

Section 2K2.1(b)(6)(B)(i), (iii). Based on the plain language of the Guideline, the enhancement does not apply here.

> i.  <u>Ms. Spires did not obtain the firearms with the intent required by § 2K2.1(b)(6)(B).</u>

Consistent with § 2K2.1(b)(6)(iii)'s purpose—of enhancing punishments for those involved in straw purchasing and firearm trafficking—an individual who "purchase[s] or receive[s]" a firearm or ammunition must do so with the intent to "transport, transfer, sell, or otherwise dispose of" the firearm to the prohibited person. That is, the person must intend to relinquish the firearm, in some way (either by transporting to, transferring to, selling or otherwise disposing of), the firearm to another person. Overall, this intent requirement helps cabin the application of the enhancement to situations involving straw purchasing or trafficking.

Ms. Spires lacked the requisite intent.

The PSR suggests Ms. Spires "transferred" the firearms to Mr. Day because Mr. Day "handled the firearms Spires purchased." PSR ¶ 38. But "transfer," in the language of the Guideline, does not encompass the type of collateral "handl[ing]" Mr. Day performed.

First, the term "transfer" itself suggests a *change* in possession. "Transfer" is to "convey or remove from one place or one person to another; to pass or hand over from one to another, esp to change over the possession or control of." *Black's Law Dictionary*, 12th ed. (2024). A situation involving ongoing, simultaneous possession—like the situation presented here—does not constitute a "transfer."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, even if "transfer" could be given the expansive definition the PSR suggests, traditional tools of statutory construction would counsel against it. One of those tools, *noscitur a* sociis, "teaches that a word is given more precise content by the neighboring words with which it is associated." *Fischer v. United States*, 603 U.S. 480, 487 (2024). Thus, "transfer" must be interpreted in keeping with other terms, such as "sell" and "otherwise disposed of." "Otherwise disposed of" suggests that each of the preceding terms—of transport, transfer, and sell— encompass a situation where the firearm is "disposed of." To "dispose of" means to "get rid of" or "transfer to the control or ownership of another." *Merriam Webster Dictionary*.[2]

Again, that did not happen here. Ms. Spires always maintained ownership and possession of the firearms. Although Mr. Day may have *shared* possession, at times, that shared possession does not constitute disposing of or transferring ownership or control of the firearms to Mr. Day.

Overall, Ms. Spires purchased the firearms for herself. She kept them at the property she shared with Mr. Day, where Mr. Day *also* had access to them. But she never transferred ownership of the firearms. And she in no way relinquished her overall control of the firearms. Accordingly, she did not "transport, transfer, sell, or otherwise dispose of" the firearms to Mr. Day, nor did she ever intend to.

        ii.   <u>Mr. Day did not "induce" Ms. Spires to purchase firearms,</u>
             <u>as required by the enhancement.</u>

Section § 2K2.1(b)(6)(B) does not apply for an independent reason: Mr. Day did not "induce" Ms. Spires to purchase any firearms.

The PSR suggests that Mr. Day induced Ms. Spires by going "with Spires to the gun shop and instruct[ing] her which firearms to purchase." *Draft PSR* ¶ 38.

---

[2] *Available at* https://www.merriam-webster.com/dictionary/dispose%20of (Accessed Jan. 16, 2016)

6

However, the facts make clear that Mr. Day was providing *advice* to Ms. Spires about which firearms to purchase, not directing or inducing particular action (e.g., through a monetary payment). As explained, Ms. Spires wanted to learn how to defend herself with firearms but "she did not know much about the quality or types of firearms." PSR ¶ 25. Mr. Day, in contrast, did have "knowledge regarding quality." *Id*. Mr. Day, then, would accompany Ms. Spires to gun shows or to a gun shop, and he would provide input on which guns she should purchase.

That type of information sharing—especially in the context of a long-term, committed relationship—cannot constitute "inducement" within the meaning of § 2K2.1(b)(6)(B).

## II.    Objection 2: The Victim Impact section of the PSR is incorrect.

The Draft PSR incorrectly includes "any law enforcement who came to [Mr. Day's] residence"; Tedros Adhanom Ghebreyesus; and "the five FBI agents who were involved in [Mr. Day's] arrest," as purported victims in this case. Draft PSR ¶ 32.

The PSR is incorrect. The information should be removed.

Mr. Day pleaded guilty to a single violation of 18 U.S.C. 922(g)(1). There are no identifiable victims of this crime. Mr. Day maintains his innocence on the remaining charges and, as a result of the plea agreement, the remaining charges will be dismissed.







Respectfully submitted:    January 20, 2026.

JON M. SANDS
Federal Public Defender

*s/Mark Rumold*
MARK T. RUMOLD

9

Asst. Federal Public Defender