TIMOTHY COURCHAINE
United States Attorney
District of Arizona

ABBIE S. BROUGHTON
California State Bar No. 226680
GLENN McCORMICK
Arizona State Bar No. 013328
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Abbie.Broughton@usdoj.gov
Email: Glenn.McCormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-23-08132-PCT-JJT |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| Donald Day Jr., | |
| Defendant. | |

The United States of America respectfully submits this memorandum to assist in the sentencing scheduled in this case February 12, 2026. The United States requests a sentence of 46 months with 3 years supervised release to follow.

Defendant pleaded guilty to one count of 18 U.S.C. 922(g)(1), felon in possession of firearms and ammunition. A violation of 18 U.S.C. 875(c), a violation of 26 U.S.C. 5845(a)(1), 5861(d), and 5871, and a violation of 18 U.S.C. 115(a) will be dismissed at the time of sentencing. The Court, however, can—and should—consider the entirety of the conduct surrounding Defendant's possession of firearms and ammunition, including his possession of a short-barreled rifle that he modified, the threats he made online, and the threats he made towards agents. *See* United States Sentencing Guidelines Manual § 1B1.3(a)(1); *United States v. Watts*, 519 U.S. 148, (1997), *Witte v. United States,* 515 U.S. 389, (1995); *United States v. Fitch*, 659 F.3d 788, 795 (9th Cir. 2011)(holding a sentencing

judge can increase a defendant's sentence based on uncharged, or even acquitted conduct.) Here, the offense conduct, including dismissed counts, relates to the counts of conviction. The threats counts, online statements, and relationship with the Trains in Australia involve and include comments about and around possession and use of firearms and ammunition.

## I.     The Offense Conduct

For several months, including in December 2022 and February 2023, Defendant made postings and comments online to incite violence and threaten various groups and individuals, including law enforcement and government authorities. *See* Amended Superseding Indictment (Doc. 37). These posts included threats to law enforcement. In addition to the charged post, numerous other posts discuss violence and context that establish the Defendant's state of mind. These include comments regarding gun ownership, and prior criminal history. These posts were made close in time to the charged threats. During the same time frame, Defendant lived with his girlfriend, on a rural property outside Heber, Arizona. Defendant's online communications and posts focused on living as a survivalist, other ideology, and using violence and firearms to "defend" his property should law enforcement or other government actors enter his property.

Defendant frequently communicated online with likeminded friends who lived on a rural property in Australia, (the Trains who used online monikers Daniel and Jane) (Doc. 37 ¶ 7; PSR ¶ 9). Day offered support and solidarity to the Trains, stated he wished he was with them, implied law enforcement would regret the day they messed with them, and told the Trains to do that they must with determination and fury. (PSR ¶ 7). Defendant sent videos and comments to the Trains on YouTube. One such message was recovered on Stacy Train's phone, speaking of the "language of violence". (Exhibit A). In another comment posted on YouTube, recovered via email search warrant, Defendant told "Daniel" that he looked "forward to taking the scalps of our enemies alongside" him. (Exhibit B). On December 12, 2022, the Trains shot and killed two police officers who came to their property looking for a missing person, wounded a third officer, and killed a neighbor who came to investigate. (Doc. 37 ¶¶ 7-10, 17-18, 21; PSR ¶ 6).

Shortly after killing the officers on December 12, 2022, Defendant's friends posted a video online stating "[t]hey came to us, and we killed them. If you don't defend yourself against these devils and demons, you're a coward." (Doc. 37 ¶ 23; PSR ¶ 7). They specifically mentioned Defendant in their video, saying "We'll see you when we go home. We'll see you at home, Don. Love you." *Id*. Defendant responded to the video saying, among other things, "I tell you, family, that those bastards will regret that they ever fucked with us," "our enemies will become afraid of us," "We too, will never ever bow to the scum which plagues us," and "We love you, we care for you. -Don and Annie." *Id*. The Trains later died in a shootout with police. (Doc. 37 ¶ 22, n.1; PSR ¶ 8).

When he learned of their death, Defendant made an online post where he threatened to kill law enforcement officers, stating, "[w]ell, like my brother Daniel, like my sister Jane, it is no different for us. The devils come for us, they fucking die. It's just that simple. We are free people; we are owned by no one." (Doc 37 ¶ 26; PSR ¶ 9). Defendant made this statement after previously publicly posting on a social media platform that he is an "x-con, who's armed to the teeth" and that he owned multiple firearms. (Doc. 37 ¶ 17).

On December 1, 2023, when Defendant was arrested for making online threats, law enforcement officers recovered nine firearms and thousands of rounds of ammunition from Day's residence and personal vehicle. Defendant made online statements regarding possessing firearms and ammunition (*e.g.*, "In order to maintain my ammo cache, I work outside the system," "my wife has a lunch packed for me, my gear is within arm's reach of me, my rifle is oiled, and I am ready to head out of the door in less than 5 minutes 24/7/365," "these days, I just watch the stupid through the keyhole, 'til it's time to center my rifle barrel through it."). Multiple witnesses personally saw Defendant possessing firearms. Defendant's DNA was identified for inclusion on seven of the nine weapons located at his residence. Defendant's fingerprint was identified on a receipt for ammunition that was located in the same room as most of the firearms and within the box where there were three buckets of ammunition with approximately 10,000 rounds of ammunition. In Defendant's post-arrest statement where he admitted to purchasing the ammunition, but would not tell

the agents which store. Defendant admitted his status as a prior convicted felon. Defendant had knowledge of that status through court records as well as Defendant's own statements. (Doc. 37 ¶¶ 17-20; PSR ¶ 14).

In his post arrest interview, Defendant made a threat to the agents interviewing him, stating "I'll tell you this, if anything happens to my wife, and I ever get out of these cuffs, I'll come for every fucking one of you. How's that? You better kill me, if you fuck my wife up, you hurt her in any way, you better kill me here and now, just dump my body somewhere…I'm not playing with you guys. I'm not making idle threats here. Don't hurt my wife".  (PSR ¶ 16).

Defendant's girlfriend, Sabrina Spires, was interviewed multiple times regarding her knowledge of events. The two lived together on the property she purchased with her inheritance for about 10 years. They did share the goal of living off the grid and raising food and animals. Spires relayed that at some point, Defendant became very interested in finding people online that shared his views, and he got very close to the Trains. In interviews right after Defendant's arrest, she initially claimed that the firearms and ammunition were solely hers. Later, she explained that the relationship was emotionally abusive, and she later obtained a protective order. Spires told agents that Defendant sawed off the shotgun and showed her and directed her regarding gun purchases at a gun show and Reeders gun shop in Flagstaff and would not allow her off the property. Spires built an elevated shooting platform on a Conex box on the property for Defendant, and he taught her a plan for if the "devils" came to the property, referring to law enforcement. That plan involved hiding in the "gun room" where guns and ammunition and ballistic vests were stored, while Defendant went and defended their property. (PSR ¶¶ 25, 29).

**II.    Guideline Calculation**

Probation has correctly calculated the Guideline range in the PSR.  With an offense level of 23 and a criminal history category of I, the applicable Guideline range is 46-57

months.[1] Pursuant to the plea agreement, there is a cap at the low end of the applicable Guideline range.[2] A sentence of 46 months', the low end of the guidelines, is appropriate here given the significant number of weapons possessed, the very large quantity of ammunition, and the fact that Defendant sawed off the barrel of one of the rifles to less than the legal limit. Even without considering Defendant's involvement with the Train's and online statements, there is justification for a low-end sentence.

### III. 3553 Factors

#### a. Nature and Circumstance of the Offense

Possession of nine firearms and over 10,000 rounds of ammunition, including a firearm described in 26 U.S.C § 5845(a) is not insignificant when one is a felon. Pairing that possession with online statements like I'm an "x-con, who's armed to the teeth", "In order to maintain my ammo cache, I work outside the system," "my wife has a lunch packed for me, my gear is within arm's reach of me, my rifle is oiled, and "I am ready to head out of the door in less than 5 minutes 24/7/365," and "these days, I just watch the stupid through the keyhole, 'til it's time to center my rifle barrel through it" demonstrates an arrogance and desire to flout the law and restriction around possession of firearms for felons.

Additionally, Defendant made threats online. He threatened any law enforcement who came to his home after the shooting in Wiembilla, and he threatened the Agents interviewing him after his arrest. He also made a threat calling for the killing of the director of the World Health Organization. He continued to engage in making ongoing anti-government, anti-law enforcement posts online. Some such statements cross the line to become true threats, and those were charged here. And while those threat counts will be dismissed, the law does not require a mini trial for the court to consider such evidence as relevant conduct. *Watts*, 519 U.S. at 154 ("we are convinced that a sentencing court may

---

[1] A defense objection to a two-level specific offense characteristic is pending ruling at sentencing. Should that objection be granted, the new Guideline range would be 37-46 months. In either situation, the government believes a low-end sentence is appropriate.

[2] The plea also preserves Defendant's limited right to appeal based on his prior motion to dismiss on Second Amendment grounds.

consider conduct of which a defendant has been acquitted.") Defendant's relationship with the Trains, preparing and prepping for a potential confrontation with law enforcement, communicating threats toward law enforcement, and his crime of conviction—felon in possession of firearms is all related and the former are all relevant conduct to the latter. Defendant held himself out to be a violent man. In one YouTube comment he said there "exists the virtue of violence … I am always ready to kill the wicked, no matter what costume they wear, or through what dubious authority they represent," (Exhibit C). He prepared for violence, and he prepared his girlfriend for the possibility of violence or confrontation. This attitude and demeanor are all part of the offense here and relevant for the Court's consideration in reaching a sentence.

### b. History and Characteristics of Defendant

Defendant had a difficult childhood that involved neglect and abuse and escalating criminal conduct and imprisonment, including theft of firearms. (PSR ¶¶ 48-52). His adult criminal history includes multiple assaults on law enforcement both in and out of custody and physical and sexual assault of other inmates. (PSR ¶¶ 53-57). He has been dishonest to those in his life about his history. He has remained free from further contacts with law enforcement but for some minor contacts in the early 2000s. Defendant has continuously demonstrated contempt for authority over his lifetime. He has aged to a point where he is not physically capable of engaging in physical conflict, but in his conduct in this case, found a different avenue to engage in such conduct online.

### c. Need for Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

Here, there is a need to impose a sentence that reflects the seriousness of possessing firearms while prohibited under the conditions Defendant had created on his property. He had set up a firing range and a shooting platform. He publicly stated that he would shoot anyone who came on the property.

He engaged in ongoing rhetoric encouraging violence with others half a world away. And the worst imaginable outcome occurred. It is true that Defendant is not personally

accountable for committing the murders in Wieambilla. But that does not mean that his encouragement and rhetoric didn't play a role in leading to the ambush of the helpless officers and neighbor. Such conduct, including possession of firearms he induced his girlfriend to buy for his access, creates a danger to the community and to law enforcement.

Defendant will likely argue that he had a positive relationship with a local sheriff's deputy. That may be true, but it does not negate the message he sent and the ongoing crime he committed by possessing firearms and preparing to use them in his own potential ambush. It is important to promote respect for the law. Despite Defendant's opinion on the Second Amendment, it remains illegal to possess firearms after having suffered the felony convictions he has suffered. A 46-month sentence is just for this offense.

### d. Need to Afford Adequate Deterrence

In this case there is more need for general deterrence than for specific deterrence. But both are necessary. Defendant should not possess firearms in the future, and neither should other convicted felons, particularly those who pair that possession with violent language directed at law enforcement.

### e. Need to Protect the Public

Given Defendant's current physical condition, he is not a serious threat. But his continued defiance of the law does create a concern over whether he will abide by the restriction on possessing firearms in the future.

### f. Need to Provide the Defendant with Education, Care, or Treatment

Defendant has benefitted from medical care while incarcerated. While he may argue otherwise, he has had access to medical care and will continue to have such access. In prison or on supervised release he will be able to access a support system he lacks to get benefits in place to help establish a living arrangement and medical care when he is released.

### IV. Conclusion

For all the reasons discussed above, a low-end sentence of 46 months is sufficient but not greater than necessary to reflect the seriousness of the totality of the circumstances in this case. This sentence considers the dismissed conduct that directly relates to the crime

of conviction including the statements Defendant made about his possession of firearms, his statements about violence and preparing to use firearms against law enforcement, the fact that he used his girlfriend to purchase the firearms for him to access, and the number of firearms and volume of ammunition.

Respectfully submitted this 5th day of February, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Abbie Broughton*
ABBIE S. BROUGHTON
GLENN McCORMICK
Assistant U.S. Attorneys

**Certificate of Service**

I hereby certify that on, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark Rumold
Jami Johnson
Attorneys for Defendant

*s/Abbie Broughton*
U.S. Attorney's Office